JAMES J. TORRES, State Bar No. 320192
BENJAMIN J. TOLMAN, State Bar No. 301942
TORRES & TOLMAN
201 Spear Street, Suite 1175
San Francisco, CA 94105
Telephone:   (415) 212-7748
Email:        jtorres@torrestolman.com
              btolman@torrestolman.com

*Attorneys for Plaintiff Gabriel Shin*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL SHIN,<br><br>         Plaintiff,<br><br>     v.<br><br>CITY AND COUNTY OF SAN FRANCISCO; ROBERT MUHAMMAD, in his official and individual capacities; JEANINE NICHOLSON in her official and individual capacities; ROBERT POSTEL, in his official and individual capacities; TOM O'CONNOR, in his official and individual capacities; DAVID BROWN, in his official and individual capacities; JOE CERTAIN, in his official and individual capacities; and DOES 1 through 20, inclusive,<br><br>         Defendants. | Case No.: 4:23-cv-456<br><br>**COMPLAINT FOR:**<br><br>BATTERY<br><br>ASSAULT<br><br>CALIFORNIA GOVERNMENT CODE §§ 12940 et seq. RACE AND COLOR DISCRIMINATION<br><br>CALIFORNIA GOVERNMENT CODE §§ 12940 et seq. DISABILITY DISCRIMINATION<br><br>CALIFORNIA GOVERNMENT CODE §§ 12940 et seq. RETALIATION<br><br>LABOR CODE § 1102.5 RETALIAION<br><br>LABOR CODE §§ 230 (C), (E), AND 230.1 RETALIATION<br><br>FAILURE TO PREVENT DISCRIMINATION AND RETALIATION<br><br>CALIFORNIA GOVERNMENT CODE § 12923, 12940(j) HARASSMENT<br><br>UNFAIR BUSINESS PRACTICES<br><br>42 U.S.C. §1983 RACIAL DISCRIMINATION<br><br>VIOLATION OF 42 U.S.C. §1981 RACIAL DISCRIMINATION<br><br>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br><br>**DEMAND FOR JURY TRIAL** |

## **NATURE OF THE ACTION**

2    1. Plaintiff Gabriel Shin is a Korean American who proudly served the community of San

3  Francisco as a firefighter for over 27 years. Before joining the San Francisco Fire Department

4  ("SFFD"), Firefighter Shin honorably served his country for several years overseas as a member

5  of the United States Army Infantry. As someone who has put his life on the line to protect others,

6  he never believed a threat to his own would come from within the SFFD. That all changed on

7  February 1, 2022, when he was violently attacked by SFFD's Robert Muhammad for a workplace

8  grievance.

9    2. Defendant Muhammad had a history of threatening, bullying, and aggressive behavior

10  in the firehouse spanning over a decade prior to his attack of Firefighter Shin. High-ranking SFFD

11  officials knew of this history yet failed to take any corrective action to address Defendant

12  Muhammad's dangerous volatility that he exhibited toward fellow firefighters. After getting away

13  with this behavior for years due to the SFFD's dereliction of its duty to protect employees from

14  known threats of violence, Defendant Muhammad put his threats into action.

15    3. When SFFD officials learned that Defendant Muhammad was making direct threats of

16  violence against Firefighter Shin, the SFFD refused to act. SFFD officials permitted Defendant

17  Muhammad to remain at the firehouse without so much as a word to discourage his planned attack.

18  While at work, Defendant Muhammad used an SFFD database to locate Firefighter Shin's home

19  address and schedule, information crucial in planning his attack. Defendant Muhammad also used

20  this time afforded by the SFFD to select his deadly weapon: a large brass wrench used to pry open

21  fire hydrants that he took from a fire truck. Despite knowing that he had shared plans to physically

22  attack Firefighter Shin, the SFFD gave Defendant Muhammad the means and opportunity

23  necessary to perpetrate his violent crime motivated by a workplace grievance of his own making.

24    4. On February 1, 2022, Defendant Muhammad traveled from his fire station to Firefighter

25  Shin's home, where he waited for Firefighter Shin to return from work. When Firefighter Shin

26  arrived home and began to help his neighbors by sweeping the sidewalk, Defendant Muhammad

27  surprised Firefighter Shin from behind. Although Defendant Muhammad's intent to harm was

28  clear, Firefighter Shin put his broom down and said that he would not fight. At that moment,

Defendant Muhammad pulled out the large hydrant wrench from behind his back and began swinging full force at Firefighter Shin's head. As Firefighter Shin blocked the wrench from striking his head, his arm was broken by the crushing force of Defendant Muhammad's deadly blows. With Firefighter Shin defenseless and bloodied after suffering multiple strikes to his body, Defendant Muhammad raised the large wrench to strike Firefighter Shin's skull. In that moment, the community Firefighter Shin had dedicated his life to protecting came to his rescue. Observing that Defendant Muhammad was about to carry out a potentially lethal blow to a defenseless person's head, a heroic bystander yelled at Defendant Muhammad to show him that she was carrying a gun. Only then did Defendant Muhammad put down his weapon and flee. The Alameda County District Attorney's Office has charged Defendant Muhammad with felony assault with a deadly weapon causing great bodily injury. A judge has issued a criminal restraining order against Defendant Muhammad requiring that he have no contact and remain 100 yards away from Firefighter Shin.

5. The Chief of the San Francisco Fire Department, Jeanine Nicholson, knows all of this. Her highest-ranking deputies know all of this. Even with this knowledge, Chief Nicholson never issued any form of discipline against Defendant Muhammad for coming close to killing Firefighter Shin. Instead, she chose to bring Defendant Muhammad back into the public workplace on active duty, undisciplined and undeterred from committing further acts of violence against firefighters and citizens. Defendant Muhammad has not missed a single publicly funded paycheck since attacking Firefighter Shin.

6. In stark contrast, Firefighter Shin had to remain away from work in order to avoid coming into contact with his attempted murderer — a work condition created by Chief Nicholson and her deputies. Chief Nicholson and her deputies went so far as to attempt to interfere with a criminal investigation to cover up the violent crime perpetrated against Firefighter Shin. When Firefighter Shin resisted the hostile pressure and direct order from SFFD superior officers to cease cooperation with the criminal investigation against Defendant Muhammad, Chief Nicholson punished Firefighter Shin by stripping him of his compensation and taking away his health insurance before the broken bones in his arm had even set.

1    7. Firefighter Shin should be back at work serving the community he loves. But he is not.

2    And this is because of the intentional wrongdoing of Chief Nicholson and her deputies, who went

3    to astonishing lengths to protect the attacker and to punish an innocent firefighter who was almost

4    killed. They retaliated and discriminated against Firefighter Shin, unleashing a torrent of

5    harassment to silence an Asian victim of violent crime.

6    8. Chief Nicholson and her deputies knew that Defendant Muhammad came close to killing

7    Firefighter Shin; they knew that Firefighter Shin had been diagnosed with PTSD driven by the

8    attack and the SFFD's remarkably callous and dangerous response; they knew their harassing and

9    retaliatory actions would force Firefighter Shin out of work, his life's passion. Chief Nicholson's

10   design worked; Firefighter Shin was forced to leave the SFFD.

11   **THE PARTIES**

12   9. Plaintiff Gabriel Shin is a United States citizen and is a resident of Alameda County,

13   California. Plaintiff has been employed as a Firefighter by the City and County of San Francisco

14   since 1995. Plaintiff Shin is Korean American.

15   10. Defendant City and County of San Francisco ("San Francisco Fire Department" or

16   "SFFD" or the "City") is now and at all times mentioned herein was, a public entity organized and

17   existing under the laws of the State of California.

18   11. Defendant Robert Muhammad is an employee and agent of Defendant City and County

19   of San Francisco. Defendant Muhammad is a Firefighter employed by Defendant City and County

20   of San Francisco. Defendant Muhammad acted within the course and scope of his employment

21   and agency with Defendant City and County of San Francisco at all times material to this complaint.

22   Plaintiff Shin sues Defendant Muhammad in his official and individual capacity.

23   12. Defendant Jeanine Nicholson is an employee and agent of Defendant City and County

24   of San Francisco. Defendant Nicholson is the Fire Chief of the San Francisco Fire Department and

25   was Plaintiff Shin's supervisor at all times material to this complaint. Defendant Nicholson acted

26   within the course and scope of her employment and agency with Defendant City and County of

27   San Francisco at all times. Plaintiff Shin sues Defendant Nicholson in her official and individual

28   capacity.

13. Defendant Robert Postel is an employee and agent of Defendant City and County of San Francisco. Defendant Postel is the Deputy Chief of Operations of the San Francisco Fire Department and was Plaintiff Shin's supervisor at all times material to this complaint. Defendant Postel acted within the course and scope of his employment and agency with Defendant City and County of San Francisco at all times. Plaintiff Shin sues Defendant Postel in his official and individual capacity.

14. Defendant Tom O'Connor is an employee and agent of Defendant City and County of San Francisco. Defendant O'Connor is the Deputy Chief of Administration of the San Francisco Fire Department and was Plaintiff Shin's supervisor at all times material to this complaint. Defendant O'Connor acted within the course and scope of his employment and agency with Defendant City and County of San Francisco at all times. Plaintiff Shin sues Defendant O'Connor in his official and individual capacity.

15. Defendant David Brown is an employee and agent of Defendant City and County of San Francisco. Defendant Brown is the Assistant Deputy Chief of the Airport Division of the San Francisco Fire Department and was Plaintiff Shin's supervisor at all times material to this complaint. Defendant Brown acted within the course and scope of his employment and agency with Defendant City and County of San Francisco at all times. Plaintiff Shin sues Defendant Brown in his official and individual capacity.

16. Defendant Joe Certain is an employee and agent of Defendant City and County of San Francisco. Defendant Certain is a Lieutenant of the San Francisco Fire Department and was Plaintiff Shin's supervisor at all times material to this complaint. Defendant Certain acted within the course and scope of his employment and agency with Defendant City and County of San Francisco at all times. Plaintiff Shin sues Defendant Certain in his official and individual capacity.

17. The true names and capacities, whether individual, corporate, subsidiary, partnership, associate, or otherwise, of Defendants DOES 1 through 20, inclusive, are presently unknown to Plaintiff, who therefore sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of DOES 1 through 20, inclusive, when they are ascertained. Plaintiff is informed and believes, and thereon

alleges, that Defendants named in this Complaint, including DOES 1 through 20, inclusive, are responsible in some manner for one or more of the events and happenings that proximately caused the injuries and damages hereinafter alleged.

18. Unless otherwise specified, "Defendants" as used herein shall refer collectively to Defendants City and County of San Francisco, Robert Muhammad, Jeanine Nicholson, Robert Postel, Tom O'Connor, David Brown, Joe Certain and Does 1 through 20, inclusive.

19. Upon information and belief, at all relevant times, each of the Defendants, including DOES 1-20, inclusive, was the agent, servant, employee, co-conspirator and/or joint venture of each of the other Defendants. In doing the things herein alleged, each and every Defendant, as well as each and every City and County of San Francisco officer, manager, employee, agent, or assign mentioned herein other than Plaintiff, was acting within the course and scope of this agency, employment, conspiracy, and/or joint venture, and was acting with the consent, permission and authorization of each of the other Defendants. All actions as alleged in the causes of action stated herein, except for those of Plaintiff, were ratified, approved, and/or authorized by the Defendants with full knowledge of such acts. Defendants are thus jointly and severally liable for such actions.

## JURISDICTION AND VENUE

20. This Court This action arises under 42 U.S.C. §§ 1981(a), 2000(e) and 1983. Plaintiff invokes jurisdiction over his federal claim pursuant to the provisions of 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The acts and practices complained of herein occurred in the County of Alameda, California, and the County of San Francisco, California, within this judicial district.

21. Jurisdiction over Plaintiff's pendent state law claims is appropriate under 28 U.S.C. § 1367. The state law claims are related to the claims brought pursuant to the original jurisdiction of the court, and form part of the same case and controversy under Article III of the United States Constitution.

22. This Court has personal jurisdiction over all defendants as the legal violations occurred in San Francisco County and Alameda County, and the Defendants conduct business in San Francisco County, which is located within this judicial district.

23. Assignment to the Oakland Division of the United States District Court for the Northern District of California is appropriate pursuant to Northern District Local Rule 3-2(d).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

24. Plaintiff has exhausted his administrative remedies.

25. On or about July 29, 2022, Plaintiff submitted a Claim against the City and County of San Francisco for Money and Damages (the "Claim") with the Claims Division of the Controller's Office of the City and County of San Francisco. The Claim contained substantially the same legal causes of action, and factual premises for those claims, as this complaint. The Claim was then rejected by the City and County of San Francisco. Plaintiff has thus presented a timely governmental tort claim with Defendant City and County of San Francisco in satisfaction of Government Code section 945.4, *et seq*.

26. On or about January 31, 2023, Plaintiff filed a complaint against Defendants with California's Department of Fair Employment and Housing ("DFEH") alleging multiple violations of California's Fair Employment and Housing Act ("FEHA"). Plaintiff immediately received a Right to Sue letter from the DFEH.

## FACTUAL BACKGROUND

27. "I'm gonna give you a chance to save yourself." This is the threat San Francisco Firefighter Gabriel Shin heard against his life on the morning of February 1, 2022. It came from a man who snuck up from behind as Firefighter Shin swept the public sidewalk in front of his home. Firefighter Shin turned around to find Robert Muhammad, an SFFD coworker, standing directly behind him. Although Defendant Muhammad's intent to harm was clear, Firefighter Shin put his broom down and said that he would not fight.

28. Defendant Muhammad then pulled out an SFFD large hydrant spanner from behind his back. The SFFD hydrant spanner is a 15-inch-long solid brass wrench used to pry open fire hydrants. Defendant Muhammad, who is approximately six inches taller, nine years younger and

30 pounds heavier than Firefighter Shin, raised the spanner high overhead and swung down with full force at Firefighter Shin's head. Firefighter Shin ducked and started running for his life. Defendant Muhammad gave chase and continued swinging the SFFD hydrant spanner with full force, aiming each strike directly at Firefighter Shin's head. Firefighter Shin yelled for help and repeatedly yelled for "Robert" to stop. Neighbors witnessing the attack also yelled at Defendant Muhammad to stop. One neighbor yelled that she had called the police. However, neither the prospect of eyewitnesses nor the potential for police arrest were enough to stop Defendant Muhammad's brutal and unprovoked attack as he continued swinging the hydrant spanner with full force at Firefighter Shin's head.

29. After swinging the hydrant spanner approximately 12 times at Firefighter Shin's head, Defendant Muhammad landed three blows to Firefighter Shin's right arm as he attempted to block the strikes. His right arm became swollen and bloodied by the severe beating it took as Firefighter Shin did his best to protect his life. Defendant Muhammad then aimed for the left side of Firefighter Shin's head. As Firefighter Shin used his left arm to block his head from the SFFD hydrant spanner, Defendant Muhammad struck with so much force that he snapped Firefighter Shin's ulna bone in half and made contact with Shin's face and head—breaking his glasses in half and giving Firefighter Shin a concussion.

30. Defendant Muhammad had rendered Firefighter Shin defenseless. As Firefighter Shin stumbled backward and began to collapse toward the ground, Defendant Muhammad was not satisfied with the damage he had already done to Firefighter Shin. He raised the SFFD hydrant spanner high overhead as he prepared to land a direct strike to Firefighter Shin's skull—a strike with lethal potential. But just before Defendant Muhammad swung the hydrant spanner, a neighbor yelled and diverted his attention. Defendant Muhammad observed that the neighbor was brandishing a gun. Upon observing the gun, Defendant Muhammad slowly lowered the hydrant spanner and began moving away from Firefighter Shin. Defendant Muhammad looked toward the ground in an effort to avoid further detection, but continued darting his eyes toward the neighbor as he quickly fled the scene.

COMPLAINT FOR DAMAGES

31. It was not until later that Firefighter Shin learned that the only reason Defendant Muhammad had stopped his attack was because the neighbor was holding a gun. The neighbor—a person who has dedicated her life to protecting victims of human trafficking—had determined that Defendant Muhammad was using lethal force with the intent to kill Firefighter Shin and she heroically intervened, likely saving Firefighter Shin's life.

32. As Firefighter Shin staggered to the sidewalk, he did not tend to his wounds or in any way focus on himself. A veteran who served three years overseas in US Army Infantry and a firefighter of over 27 years, Firefighter Shin is a public servant who has always put the safety and welfare of others above his own. Immediately following the attack, he directed his energy to protecting his fellow firefighters, whom he feared were in danger. Fearing that Defendant Muhammad may return to a firehouse to harm other firefighters, the first thing Firefighter Shin did was call his SFFD firehouse to warn them about Defendant Muhammad.

33. But this was not the first warning Firefighter Shin had given to the SFFD about the threat posed by Defendant Muhammad. Tragically, Firefighter Shin's instinct to protect those he worked with was not shared by SFFD itself. The SFFD knew that Defendant Muhammad had a history of threatening, bullying, and aggressive behavior in the workplace spanning over a decade. And in the days immediately leading up to his brutal attack, Firefighter Shin and at least one other SFFD firefighter had reported to multiple SFFD supervisory officers that Defendant Muhammad had threatened to harm them. The SFFD did not act on any of these reports, just as it had failed to address Defendant Muhammad's dangerous volatility that he exhibited toward fellow firefighters for years. While the SFFD sat on this critical information, Defendant Muhammad was allowed to spend his time at work freely utilizing the SFFD resources that he would need to carry out his violent attack the following day. And after Firefighter Shin reported to SFFD command the material facts surrounding Defendant Muhammad's brutal attack, the SFFD unleashed a hostile and discriminatory campaign to silence him. The SFFD hostilely pressured Firefighter Shin to stop cooperating with law enforcement. This pressure campaign was known, condoned, and orchestrated by the highest levels of the SFFD. With full knowledge of Defendant Muhammad's actions, the SFFD in effect approved his conduct, going to great lengths to protect and defend him

against criminal prosecution and the loss of his job. When Firefighter Shin withstood against the SFFD's unlawful pressure, the SFFD cut off Firefighter Shin's livelihood. Defendant Muhammad remains at work on active duty, undisciplined and fully compensated by the SFFD to this day.

**A. Muhammad displayed acts of aggression toward colleagues and superiors for over a decade that went undocumented and unaddressed by the SFFD.**

34. Defendant Muhammad has a history of aggressive, threatening, bullying, and dangerous behavior directed at SFFD coworkers and superior officers spanning over a decade. The SFFD knew of Defendant Muhammad's pattern of misconduct but brushed it under the rug for years. The following are examples of his dangerous pattern.

35. When an SFFD superior officer told Defendant Muhammad that he was engaging in an unpermitted activity at an SFFD firehouse, Defendant Muhammad aggressively stated, "Fuck you," and told the officer, "Shove your badge up your ass." Defendant Muhammad later bragged about this confrontation, prompting another SFFD officer to tell him that his behavior was inappropriate. Defendant Muhammad then stated to the officer, "Fuck you too," before aggressively moving towards the officer. As Defendant Muhammad stood face to face with the officer, another firefighter intervened to prevent a violent altercation. Although an SFFD battalion chief was summoned and apprised of the situation, Defendant Muhammad was not disciplined, and the incident went undocumented.

36. On another occasion, Defendant Muhammad became so enraged and physically aggressive toward a firefighter over a simple scheduling issue that the firefighter stated that he believed Defendant Muhammad was going to physically attack him. Another firefighter once again had to intervene to stop Defendant Muhammad from engaging in violence in the workplace. And once again, this incident went undocumented and undisciplined.

37. In October 2021, a COVID-19 vaccine mandate went into effect barring SFFD firefighters who had not shown proof of vaccination from returning to work. Despite knowing he was no longer permitted to work, Defendant Muhammad arrived at SFFD Airport Station 1 anyway. On information and belief, SFFD Captain Patricia Lee told Defendant Muhammad in person that he was not permitted to work. Defendant Muhammad became so enraged at Captain Lee that an

SFFD superior officer had to talk Defendant Muhammad out of physically harming Captain Lee. Defendant Muhammad conveyed to the superior officer his desire to physically harm Captain Lee. "Rob wanted to fuck her up," the SFFD superior officer said of Defendant Muhammad's state of mind. On information and belief, Defendant Muhammad again faced no disciplinary action for his physically threatening outburst against Captain Lee.

38. Without any corrective counseling or other necessary intervention after his most recent threatening conduct, the SFFD permitted Defendant Muhammad to return to work in mid-January 2022. Shortly thereafter, he would turn his known propensity for threatening and dangerous conduct in the workplace against Firefighter Shin.

**B. The SFFD knowingly allowed Defendant Muhammad to threaten violence against Firefighter Shin, and Defendant Muhammad acted with impunity as he freely utilized the SFFD resources he would need for his brutal attack.**

39. On January 30, 2022, an SFFD firefighter met with Defendant Muhammad at a San Francisco coffee shop. This firefighter will be referred to herein as "Firefighter GG" out of concern for his safety. Sitting at a table outside of the coffee shop with Firefighter GG, Defendant Muhammad began complaining to Firefighter GG about a workplace grievance he had with a number of firefighters, including Firefighters GG and Shin. Defendant Muhammad became enraged when Firefighter GG disagreed with Defendant Muhammad's claims regarding the workplace dispute. Defendant Muhammad slammed both fists on the table and abruptly lunged across the table at Firefighter GG. Firefighter GG feared that Defendant Muhammad was going to attack him. Defendant Muhammad then focused on Firefighter Shin and became irate. "I'm going to straighten Gabe [Gabriel Shin] out," he shouted with extreme aggression. Firefighter GG perceived this as a threat of physical violence against Firefighter Shin.

40. Immediately after Defendant Muhammad left the coffee shop, he called Firefighter Shin regarding the workplace dispute. Defendant Muhammad then stated, "The next time I see you, I am going to fuck you up." He then hung up.

41. Shortly thereafter, Firefighter GG called Firefighter Shin and shared what had transpired at the coffee shop, including that he had feared Defendant Muhammad was going to

attack him and that Defendant Muhammad had threatened physical violence against Firefighter Shin. Firefighter Shin shared with Firefighter GG the details of the threatening call he had just received from Defendant Muhammad.

42. After concluding his conversation with Firefighter Shin, Firefighter GG had a phone call with an SFFD coworker who disclosed that Defendant Muhammad had recently stated that he was angry at Firefighter Shin and Firefighter GG and that he wanted to "beat up" both.

43. Concerned for his own safety and that of Firefighter Shin's, on January 31, 2022, Firefighter GG made two separate reports to SFFD superior officers detailing Defendant Muhammad's threats.

44. While Firefighter Shin was on duty at Airport Fire Station 1 on January 31, 2022, Firefighter Shin told Captain Patricia Lee about threats Defendant Muhammad had just made. Firefighter Shin said that he believed Defendant Muhammad remained incredibly upset at him and that he was very volatile. Firefighter Shin then told Captain Lee that he was so worried about Defendant Muhammad's volatility that he would not even use a locker that once belonged to Defendant Muhammad for fear of what Defendant Muhammad might do if he found out. Captain Lee was dismissive of Firefighter Shin's concerns. Captain Lee failed to document or take any action on Firefighter Shin's report, abrogating the duty of an SFFD officer to act on a report of threats against firefighters under that officer's command.

45. While multiple SFFD superior officers were aware of the threats Defendant Muhammad had made against two firefighters, Defendant Muhammad was on duty working at SFFD Station 25 on January 31, 2022. With this knowledge, the SFFD had the duty to immediately investigate and respond to these serious reports with corrective action, and it had the opportunity to swiftly intervene while Defendant Muhammad was on duty on January 31. Instead, as SFFD superior officers sat on this vital information, Defendant Muhammad spent the nearly 24 hours before his attack freely utilizing SFFD resources while on duty—resources necessary to carrying out his attack. Defendant Muhammad used an SFFD computer system to locate Firefighter Shin's home address and real-time work schedule. With confidence in the knowledge that the SFFD would allow him to make threats against fellow firefighters as he had done for years, Defendant

Muhammad brazenly shared his plan to attack Firefighter Shin, disclosing to at least one SFFD firefighter while at work on January 31 that he "was going to beat the fuck out of Gabe [Shin]." And as senior SFFD officers continued to disregard their duty to act on their knowledge of Defendant Muhammad's threats, Defendant Muhammad was free to leave the firehouse with a 15-inch solid brass hydrant spanner that he took from a fire engine. Because the SFFD failed to intervene, Defendant Muhammad was able to drive directly from SFFD Station 25 to Firefighter Shin's home in Oakland with all of the SFFD resources that made his attack possible.

**C. After Firefighter Shin reported to SFFD command the material facts surrounding Defendant Muhammad's brutal attack, the SFFD unleashed a hostile campaign to silence him.**

46. As Firefighter Shin lay bloodied on the ground with a broken arm and a concussion, he began calling top brass within the SFFD to warn of the immediate danger posed by Defendant Muhammad. When Firefighter Shin could not reach Chief of the Department Jeanine Nicholson, Firefighter Shin called Deputy Chief of Operations Robert Postel and reported the material facts of Defendant Muhammad's attack with great detail, including the injuries he had sustained, and that Defendant Muhammad had threatened his life before swinging an SFFD hydrant spanner approximately 12 times at his head. In response to Deputy Chief Postel skeptically questioning whether it was Defendant Muhammad who had attacked him, Firefighter Shin confirmed that he was certain. As paramedics began readying Firefighter Shin for transport to Highland Hospital, Firefighter Shin handed his cell phone to an officer with the Oakland Police Department, who also reiterated the details of Defendant Muhammad's attack.

47. Chief of Department Jeanine Nicholson returned Firefighter Shin's call hours later while he was laying at the hospital. As he had done with Deputy Chief Postel, Firefighter Shin gave Chief of Department Nicholson a detailed account of the attack, the events leading up to the attack, identified Defendant Muhammad as the attacker, and shared that he had suffered a broken arm and a concussion. Chief of Department Nicholson told Firefighter Shin that the SFFD would take care of things. By this, it appears Chief of Department Nicholson meant that the SFFD would take care to protect Defendant Muhammad and silence Firefighter Shin.

48. While Firefighter Shin laid in the hospital on February 1, Defendant Muhammad had not been apprehended. An Oakland Police officer informed Firefighter Shin that the Oakland Police Department wanted to immediately obtain an arrest warrant, but could not because the SFFD refused to provide the police department with the basic identifying information about Defendant Muhammad required for the issuance of an arrest warrant (*e.g.*, his photo and date of birth). Without that information from the SFFD, the police department could not quickly identify Defendant Muhammad, including because of the number of people who share the same name.

49. The SFFD's refusal to provide needed information to the Oakland Police Department caused a significant delay in obtaining an arrest warrant. Firefighter Shin pleaded with Chief of Department Nicholson and Deputy Chief Postel that he was in fear for his life and sleeping in his car for fear of being attacked in his home by Defendant Muhammad. The SFFD never provided the Oakland Police Department with this crucial information needed to effectuate a prompt arrest. Defendant Muhammad was not placed into custody until February 8.

50. While the Oakland Police Department was made to have difficulty locating Defendant Muhammad, the SFFD experienced no such difficulty. Immediately after the attack as Firefighter Shin lay in his hospital bed, Deputy Chief Postel was in direct communication with Defendant Muhammad, who provided Chief Postel with information about his knowledge of the crime and his whereabouts.

51. As Defendant Muhammad walked free and Firefighter Shin lived out of his car and pleaded for the SFFD to cooperate with law enforcement, SFFD supervisory officers initiated a concerted effort to pressure Firefighter Shin to end his own cooperation with law enforcement. On February 2, 2022, the day after the attack, an SFFD supervisory officer called Firefighter Shin. After Firefighter Shin shared material details of the attack, the supervisory officer asked if "we [the SFFD] could work something out" that involved Firefighter Shin not participating in a criminal proceeding against Defendant Muhammad. When Firefighter Shin held firm against this supervisory officer using the weight of his SFFD rank to intimidate and silence him, a second SFFD supervisory officer named Lieutenant Joe Certain called Firefighter Shin later the same day. After Firefighter Shin again shared a detailed account of the attack and his injuries, Lieutenant

Certain defended Muhammad and repeatedly stated with the tone of an order, "you're not really going to press charges." When Firefighter Shin refused to cave to his direct supervisor's pressure, Lieutenant Certain became irate, yelling as he issued Firefighter Shin a direct order to end his cooperation with the law enforcement investigation of Defendant Muhammad.

52. Firefighter Shin reported to Chief of Department Nicholson and Assistant Deputy Chief of the Airport Division David Brown that Lieutenant Certain had ordered him to end his cooperation with law enforcement while defending Defendant Muhammad. Firefighter Shin told them that Lieutenant Certain's conduct was witness intimidation. Assistant Deputy Chief Brown defended and excused Lieutenant Certain's actions. Chief of Department Nicholson did not offer to take any corrective action to stop SFFD witness and victim intimidation. Two days later, a third SFFD supervisory officer called Firefighter Shin and pressured him to stop cooperating with the law enforcement investigation of Defendant Muhammad.

53. On February 3, 2022, Firefighter Shin went to his SFFD station to submit medical documentation. An SFFD officer blocked Firefighter Shin from entering the station. The officer told Firefighter Shin that he was barred from entering the station and that SFFD members were prohibited from speaking with him, an order that had come down from SFFD command, along with the threat of discipline by Deputy Chief Postel for any violation.

54. Firefighter Shin then travelled to a neighboring airport fire station to submit his medical documentation and met with Captain Patricia Lee and Assistant Deputy Chief Brown. As they sat together in a room, Firefighter Shin shared the material details of Defendant Muhammad's attack. He further informed Assistant Deputy Chief Brown of the information he had reported to Captain Lee the day before the attack, including threats Defendant Muhammad had made on January 30, 2022. Captain Lee confirmed that she had sat on this vital information, making no report of her own to document or act upon Firefighter Shin's complaint. Upon hearing this, Assistant Deputy Chief Brown directed Captain Lee to write an "Unusual Occurrence" report after the fact. However, in the Unusual Occurrence report, Captain Lee mischaracterized Firefighter Shin, severely downplaying his own report by claiming that he had merely stated that Defendant Muhammad was "mad at him". Despite having knowledge of the vital warning Firefighter Shin

had made the day before the attack, Assistant Deputy Chief Brown approved Captain Lee's false recitation of fact in the Unusual Occurrence report before issuing the report to Chief of Department Nicholson.

55. Within days of the attack, Firefighter Shin received a call from Lieutenant Zachary Tibbits, an internal investigator for the SFFD. Responding to Mr. Tibbits' questioning, Firefighter Shin recounted the material details of Defendant Muhammad's attack. Without warning, Mr. Tibbits began to interrogate Firefighter Shin, cross examining him as if he were a hostile witness. Approximately a month later, Mr. Tibbits again contacted Firefighter Shin to inform him that he was required to sit for what is characterized by the Firefighter Bill of Rights Act as an interrogation even though he was off duty due to his serious injuries as a victim of Defendant Muhammad's brutal attack. Mr. Tibbits stated that he had received details of Muhammad's attack on Shin from another eyewitness. However, Mr. Tibbits informed that one of the primary reasons for speaking to Firefighter Shin again (since Shin had already shared the material facts of the attack) was to discuss Muhammad's reason for attacking Shin. He also stated that it was possible Shin could be a target of disciplinary action depending on his statements. With Shin's numerous statements to Tibbits and the top-ranking officials sharing the material details of Muhammad's attack, and with added information from another eyewitness to the attack, it was clear of the SFFD had more than sufficient information to find that Defendant Muhammad had attacked Firefighter Shin. Troubling was Tibbits' suggestion that, in the context of an employment investigation, an employee's purported reason for severely beating a coworker could ever justify or otherwise defend against disciplinary action. Firefighter Shin explained that he was not ready or medically permitted to sit for an interrogation because he was off duty and had recently been diagnosed with Post Traumatic Stress Disorder ("PTSD").

56. Chief of Department Nicholson called Firefighter Shin shortly thereafter to tell him that he had to sit for an interrogation with Mr. Tibbits. Firefighter Shin shared that he had been diagnosed with PTSD and was not medically cleared to be interrogated. He further stated that Mr. Tibbits had triggered his PTSD symptoms by speaking to him as though he were a criminal rather than a victim. Chief of Department Nicholson expressed no concern for Firefighter Shin's health

or well-being and continued to pressure him to be interrogated. Firefighter Shin also raised the fact that multiple SFFD superior officers had condoned Defendant Muhammad's actions and hostilely pressured him to stop cooperating with authorities. He asked what steps the SFFD had taken to prevent this witness intimidation. Chief of Department Nicholson blatantly dismissed Firefighter Shin, making clear the SFFD had not taken corrective action to address this serious misconduct as she would not so much as condemn the SFFD's victim intimidation or defense of Muhammad. Instead, Chief of Department Nicholson continued to pressure Firefighter Shin to appear for an interrogation while he was off duty — a violation of the Firefighters Procedural Bill of Rights Act — threatening that his time was running out.

57. On or about April 29, 2022, Firefighter Shin received a phone call from Deputy Chief of Administration Tom O'Connor. Deputy Chief O'Connor told Firefighter Shin that he needed to promptly sit for an interrogation by Mr. Tibbits. Deputy Chief O'Connor also told Firefighter Shin that he should not have an attorney present. When Firefighter Shin reiterated that he was not yet medically cleared to sit for an interrogation because he has been diagnosed with PTSD, Deputy Chief O'Connor became irate, yelling at Firefighter Shin that if he did not show in person for an interrogation, the SFFD would remove him from paid leave. Deputy Chief O'Connor has a history of open hostility against firefighters who report unlawful activity within the SFFD. In a newsletter sent throughout the SFFD, O'Connor referred to such firefighters as "snitches" focused on "destroying all this department stands for."[1]

58. No one at the SFFD could explain why Firefighter Shin needed to sit for an interrogation with Mr. Tibbits, given that he had already explained the material details surrounding Defendant Muhammad's violent attack to Mr. Tibbits and, more importantly, to the SFFD's top-ranking officials. The only difference was that with an in-person interrogation, the SFFD would record their cross examination of Firefighter Shin while, according to Mr. Tibbits, focusing on Defendant Muhammad's rationale behind the attack.

---

[1] https://www.sfgate.com/bayarea/article/san-francisco-fire-dept-flap-over-article-2803976.php

59. The SFFD had condoned Defendant Muhammad's actions and, through a coordinated intimidation campaign, hostilely pressured Firefighter Shin to stop cooperating with authorities. The SFFD had drafted a false report after the attack about Firefighter Shin's disclosure of Defendant Muhammad's threats. The SFFD had barred Firefighter Shin from entering his own firehouse and threatened other firefighters not to speak with him. The SFFD had failed to provide the Oakland Police Department with requested information about Defendant Muhammad needed for the issuance of an arrest warrant, all the while maintaining direct contact with Defendant Muhammad. The SFFD had already cross-examined Firefighter Shin as though he were a hostile witness. Now the SFFD was pressuring the victim of a violent crime suffering from PTSD, a concussion and a shattered arm, to submit to a recorded interrogation without an attorney present regarding the rationale behind his attacker's crime. Given the totality of the SFFD's hostile treatment of Firefighter Shin and the fact that it was undisputed that Defendant Muhammad had perpetrated the violent attack, this recorded interrogation by the same individual who had already treated Firefighter Shin like a hostile witness was plainly aimed at fabricating evidence to blame the victim and seek some defensible justification for the attacker's actions. The SFFD more than condoned Defendant Muhammad's actions; the SFFD was actively treating Firefighter Shin as an adversary and conspiring to harm the victim of a violent crime in favor of the coworker who had attacked him.

60. The SFFD followed through on Deputy Chief O'Connor's threat, ending Firefighter Shin's pay in May 2022. The SFFD also cut off Firefighter Shin's health insurance without notice as he worked to rehabilitate from his shattered arm, concussion, and PTSD.

61. The SFFD continues to employ Robert Muhammad as a firefighter and has not subjected him to any form of discipline. The SFFD has issued Muhammad his taxpayer-funded salary without interruption since he attacked Firefighter Shin. Most troubling, after the SFFD placed him on a brief paid leave in the wake of brutally attacking Firefighter Shin, the SFFD elected to put Defendant Muhammad back to work as a uniformed, active-duty firefighter. Because of this, the SFFD has endangered firefighters in proximity to Muhammad, including Firefighter GG, who has now been forced to be in the same room as Muhammad at work after he threatened

COMPLAINT FOR DAMAGES

Firefighter GG and attacked Firefighter Shin. Further, prior to the SFFD deciding to place Muhammad back to work, the SFFD knew that Muhammad had been charged by the Alameda County District Attorney with felony assault with a deadly weapon causing great bodily injury upon Firefighter Shin, and that Muhammad was subject to a criminal protective order requiring that he remain 100 yards away from Firefighter Shin and have no contact with him. Yet the SFFD still chose to bring Muhammad back to work, knowing that Muhammad's presence would force Firefighter Shin to remain away from work without pay. Chief Nicholson and her deputies forced Firefighter Shin to remain away from work under threat of further violence by a coworker that they had invited back into the public workplace with open arms. Chief Nicholson and her deputies forced Firefighter Shin to choose self-preservation and leave the SFFD.

62. In response to reporters' questions about Defendant Muhammad's attack of Firefighter Shin, Chief of Department Nicholson's office referred to the incident as an "HR matter" and declined to offer further comment—refusing to so much as disavow a violent criminal act by their employee. However, a high-ranking SFFD chief spoke directly to Firefighter Shin and acknowledged that the SFFD was responsible for the harm he suffered at the hands of Defendant Muhammad. The SFFD chief stated that the SFFD knew of Defendant Muhammad's history of misconduct and had the SFFD properly acted on this knowledge, Firefighter Shin would have never been harmed by the SFFD's employee over a workplace dispute.

## LEGAL CLAIMS

### FIRST CAUSE OF ACTION

### (Battery)

### (Against Defendants Robert Muhammad and City and County of San Francisco)

63. On February 1, 2022, Robert Muhammad intentionally made harmful and offensive contact with Gabriel Shin's body by repeatedly hitting him with a hydrant spanner owned by the SFFD. At no time did Firefighter Shin consent to said contact. A reasonable person in Firefighter Shin's situation would have been offended by the contact. As a result of Defendant Muhammad's acts, Firefighter Shin was in fact harmed and offended by Muhammad's contact with Shin's person.

64. Defendant City and County of San Francisco (the "City") is responsible for the wrongful conduct of employee Defendant Muhammad as alleged herein pursuant to California Government Code section 815.2 (a).

65. In this case, the City's employee, Defendant Muhammad, was acting within the course and scope of his employment when he brutally attacked Firefighter Shin. The beating incident and Firefighter Shin's injuries as alleged herein resulted from a dispute arising out of the employment, and did not arise from personal malice unrelated to the employment. Outside of their connection through their employment, Firefighter Shin and Defendant Muhammad did not know each other or associate at all with each other. Neither had ever been to the other's home (prior to Defendant Muhammad showing up at Shin's home to attack him) nor socialized outside of the workplace in any way whatsoever. The dispute which was the proximate cause of the assault and battery arose out of the employment. Defendant Muhammad's tortious conduct results from a dispute over Shin's actions in performing his duties. Defendant Muhammad believed that Firefighter Shin's workplace performance of his duties negatively affected Muhammad's ability to perform his work. This workplace dispute of Defendant Muhammad's own making escalated and ultimately turned violent.

66. The SFFD knew of Defendant Muhammad's propensity for aggressive, threatening, and dangerous behavior toward supervisors and coworkers in the workplace, but failed to take any corrective action. The SFFD knew of the specific threat that Defendant Muhammad posed to Firefighter Shin, as Firefighter Shin and a coworker both informed multiple SFFD supervisors that Defendant Muhammad had made recent and credible threats against them. Firefighter Shin was on duty at his SFFD firehouse when he reported Defendant Muhammad's threats to a supervisor. At the same time, Defendant Muhammad was also on duty, yet the SFFD supervisors failed to take any action whatsoever to protect Firefighter Shin from a known threat posed by Defendant Muhammad. Instead, Defendant Muhammad was permitted to sit at work for nearly 24 hours after his threats were reported by Firefighter Shin and the coworker. The City's intervention during this period when the SFFD had direct and unfettered access to Defendant Muhammad while he was on duty would have prevented his ability to carry out the attack. While the City once again brushed

the known threat posed by Defendant Muhammad under the rug as the SFFD had done for many years, he had free access to the SFFD resources he would need to attack Firefighter Shin. While he was on duty and after the SFFD knew of his recent threats, Defendant Muhammad utilized an SFFD computer database to locate Firefighter Shin's home address. Defendant Muhammad then used an SFFD computer database to determine Firefighter Shin's schedule—information that changes up to the last moment before a new shift begins and information that Defendant Muhammad would have needed immediately before he went off duty on February 1, 2022, to time his attack. Defendant Muhammad then took the SFFD hydrant spanner that he would use to attack Firefighter Shin from a fire engine—a tool that Defendant Muhammad found ideal in carrying out his attack because it is a solid brass bar easily capable of inflicting serious bodily injury, yet easier to conceal than other potential weapons, such as a baseball bat.

67. With the SFFD resources he was able to freely utilize over the course of nearly 24 hours while the SFFD was aware that he was on duty and had made serious and credible threats of violence against coworkers, Defendant Muhammad was able to immediately carry out his plan to attack Firefighter Shin—a plan that Defendant Muhammad had openly shared with at least one coworker while at SFFD Fire Station 25 the day before the attack. Defendant Muhammad drove directly from SFFD Fire Station 25 to Firefighter Shin's home, where he knew Firefighter Shin was likely located because he knew that Firefighter Shin had just completed a tour of duty and, given the strain and duration of time away from home incidental to the job, most firefighters go home to rest. As soon as Defendant Muhammad saw Firefighter Shin alone in front of his home on the morning of February 1, 2022, he used the SFFD hydrant spanner to brutally attack Firefighter Shin. The SFFD gave Defendant Muhammad the means and opportunity to carry out his attack, all the while knowing of his motive and stated intent.

68. Chief of Department Nicholson's office has acknowledged that Defendant Muhammad's attack of Firefighter Shin is a work-related matter by publicly announcing that it is an "HR matter" internal to the SFFD. And a high-ranking SFFD chief acknowledged to Firefighter Shin that the SFFD was responsible for the harm he suffered at the hands of Defendant Muhammad.

COMPLAINT FOR DAMAGES

69. The SFFD authorized or subsequently ratified the attack carried out by Defendant Muhammad against Firefighter Shin. As previously described, the SFFD knew in the years and days leading up to the attack of the specific threat to employees posed by Defendant Muhammad and the SFFD intentionally failed to take any corrective action to stop him from harming other employees. After Defendant Muhammad's brutal beating of Firefighter Shin, the SFFD immediately learned of the facts surrounding the attack. Firefighter Shin shared these material facts in great detail directly with Chief of Department Jeanine Nicholson, Deputy Chief Robert Postel, Deputy Chief Tom O'Connor, Assistant Deputy Chief David Brown, Captain Patricia Lee, SFFD investigator Zachary Tibbits, and many other high-ranking SFFD officials. With this information, the SFFD has failed to properly and fully investigate Defendant Muhammad and has taken no steps to punish him, ameliorate the threat he poses, redress any of the harm he has done, or in any way repudiate his actions. Instead, the SFFD continues to employ Defendant Muhammad to this day and, on information and belief, continues to have Defendant Muhammad work on active duty and pay him his regular compensation. By contrast, the SFFD has taken various adverse employment actions against Firefighter Shin for reporting Defendant Muhammad's attack. Importantly, three separate SFFD supervising officers have pressured Firefighter Shin not to cooperate with the Alameda County District Attorney's criminal case against Defendant Muhammad—in one instance directly ordering Firefighter Shin to cease cooperation. When Firefighter Shin reported that a supervising officer had defended Defendant Muhammad's actions and hostilely ordered Firefighter Shin to cease his cooperation with authorities investigating Defendant Muhammad, the SFFD's top brass defended the conduct of the SFFD supervising officer and condoned his behavior. Thereafter, SFFD supervising officers continued to contact Firefighter Shin and pressure him to cease his cooperation with law enforcement authorities. The SFFD thus demonstrated their condonation and approval of Defendant Muhammad's tortious actions by defending his actions and undertaking a concerted effort to protect him by attempting to silence Firefighter Shin. When Firefighter Shin disobeyed the SFFD's pressure and direct order for him to stop cooperating with law enforcement, the SFFD cut off Firefighter Shin's compensation. The SFFD has not paid Firefighter Shin since April 2022.

70. As a direct and proximate result of the unlawful conduct as alleged herein, Firefighter Shin has suffered physical injury, severe emotional distress, humiliation, embarrassment, mental and emotional distress and anxiety, economic harm and other consequential damages.

71. The aforementioned conduct by the City and Defendant Muhammad was willful, wanton, and malicious. At all relevant times, the City and Defendant Muhammad acted with conscious disregard of Firefighter Shin's rights and also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and/or humiliation to Firefighter Shin. Firefighter Shin is further informed and believes that the City and Defendant Muhammad intended to cause fear, physical injury and/or pain and suffering to Firefighter Shin. By virtue of the foregoing, Firefighter Shin is entitled to recover punitive and exemplary damages.

**SECOND CAUSE OF ACTION**

**(Assault)**

**(Against Defendants Robert Muhammad and City and County of San Francisco)**

72. On February 1, 2022, Robert Muhammad acted with intent to cause harmful and offensive conduct, and threatened to touch Plaintiff in a harmful or offensive manner. Plaintiff reasonably believed he was about to be touched in a harmful or offensive manner and it reasonably appeared to Plaintiff that Defendant Muhammad was about to carry out the threat. At no time did Firefighter Shin consent to said contact. A reasonable person in Firefighter Shin's situation would have been offended by the contact. Defendant's conduct was a substantial factor in causing Plaintiff's harm. As a result of Defendant Muhammad's acts, Firefighter Shin was in fact placed in great apprehension of imminent harmful and offensive contact with his person.

73. The City is responsible for the wrongful conduct of employee Defendant Muhammad as alleged herein pursuant to California Government Code section 815.2 (a), as described in paragraphs 56 through 63 herein.

74. As a direct and proximate result of the unlawful conduct as alleged herein, Firefighter Shin has suffered physical injury, severe emotional distress, humiliation, embarrassment, mental and emotional distress and anxiety, economic harm and other consequential damages.

75. The aforementioned conduct by the City and Defendant Muhammad was willful, wanton, and malicious. At all relevant times, the City and Defendant Muhammad acted with conscious disregard of Firefighter Shin's rights and also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and/or humiliation to Firefighter Shin. Firefighter Shin is further informed and believes that the City and Defendant Muhammad intended to cause fear, physical injury and/or pain and suffering to Firefighter Shin. By virtue of the foregoing, Firefighter Shin is entitled to recover punitive and exemplary damages.

## THIRD CAUSE OF ACTION

### (Negligence)

### (Against All Defendants)

76. Defendant Muhammad's attack of Firefighter Shin violated the law, including section 245 (a) (1) of the Penal Code of California. While the City did not directly commit the assault and battery, the City had a duty to exercise ordinary care in its interactions with its employees—including Firefighters Shin and Muhammad—and failed to use a degree of care that would have been used by a person of ordinary prudence under the same or similar circumstances by at least (but not limited to—as described above) the following:

- The City had a duty to properly supervise its employees, including Defendant Muhammad, so as to reasonably protect co-workers from the dangerous propensities shown by Defendant Muhammad towards his co-workers. A special relationship exists between employers and employees, such as between the City and Firefighter Shin, giving rise to an employer's duty to protect employees. The City was charged with taking all reasonable and appropriate action to address and prevent the aggressive, threatening, and dangerous behavior of its employee toward coworkers and superiors, and it failed to do so.
- The City knew of Defendant Muhammad's propensity for aggressive, threatening, and dangerous behavior toward supervisors and coworkers in the workplace, but failed to take any corrective action. Moreover, the City knew of the specific threat that Defendant Muhammad posed to Firefighter Shin, as Firefighter Shin and a coworker both informed multiple SFFD supervisors that Defendant Muhammad had made recent and credible threats against them. Still, the City refused to act.
- The City hired and continues to employ Defendant Muhammad, who had a history of aggressive, threatening, and dangerous behavior toward supervisors and coworkers in the workplace that was known to the City. The City knew Defendant Muhammad's behaviors created a particular risk to others, including Firefighter Shin, but failed to properly hire, retain, and supervise him.
- The City failed to properly investigate Muhammad's history of insubordination, aggressiveness, and violence and to pursue appropriate corrective and disciplinary action.
- The City failed to properly monitor Muhammad, including to ensure that he was not using

City and/or SFFD resources improperly (including obtaining confidential information about Firefighter Shin and a potentially deadly weapon).

- The City failed to properly secure the confidential information of Firefighter Shin, including his home address.
- The City failed to implement, enforce, and otherwise promulgate safety policies and procedures.
- The City failed to properly train, supervise, and monitor how its employees handled the aftermath of the assault on Firefighter Shin, which resulted in retaliation, discrimination, emotional distress, and economic damage to Firefighter Shin.
- The City negligently retained Muhammad knowing that he had severely assaulted and battered fellow City employee, Shin. The City also knew a criminal restraining order was and continues to be in effect barring Muhammad from having any contact with Shin and requiring that he remain 100 yards away from Shin. By placing Muhammad back at work, the City caused substantial harm to Shin, forcing him to either abstain from showing up to work or to show up to work in order to attend to his livelihood and chosen occupation and calling while facing the trauma and potential for serious injury of having to face his attacker in the workplace in violation of a restraining order.

77. Each and all of the foregoing acts (of omission or commission), including those detailed more expansively further above, were negligent and constituted negligence, and were each and all, independently and/or concurrently the proximate cause of the harm to Firefighter Shin described above.

78. As a direct and proximate result of the unlawful conduct as alleged herein, Firefighter Shin has suffered physical injury, severe emotional distress, humiliation, embarrassment, mental and emotional distress and anxiety, economic harm and other consequential damages.

79. The aforementioned conduct by the City and Defendant Muhammad was willful, wanton, and malicious. At all relevant times, the City and Defendant Muhammad acted with conscious disregard of Firefighter Shin's rights and also acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and/or humiliation to Firefighter Shin. Firefighter Shin is further informed and believes that the City and Defendant Muhammad intended to cause fear, physical injury and/or pain and suffering to Firefighter Shin. By virtue of the foregoing, Firefighter Shin is entitled to recover punitive and exemplary damages.

**FOURTH CAUSE OF ACTION**

**(Retaliation for Engaging in Protected Activity: Violation of Labor Code § 12940(h))**

**(Against Defendant City and County of San Francisco)**

COMPLAINT FOR DAMAGES

80. Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

81. At all relevant times herein mentioned, FEHA, Gov. Code, § 12940, *et seq.*, was in full force and effect and was fulling binding upon Defendant as an employer. Specifically, section 12940(l)(4) and (m)(2) make it an unlawful employment practice for an employer to retaliate against any employee for requesting an accommodation for a serious medical condition.

82. Firefighter Shin engaged in protected activity by requesting accommodation for his serious medical conditions, which is also a protected activity. Govt. Code §§ 12940(l)(4), (m)(2).

83. The City punished Firefighter Shin with a series of adverse employment actions for requesting accommodation for his serious medical conditions.

84. Plaintiff's seeking to exercise rights guaranteed under FEHA was a substantial motivating reason for Defendant's decision to subject Plaintiff to adverse employment actions, including, but not limited to, placing Plaintiff on unpaid leave status, as well as Defendant's course of conduct that, taken as a whole, materially and adversely affected the terms, conditions, or privileges of Plaintiff's employment.

85. Defendant's unlawful actions were a direct, foreseeable, and proximate cause of the harm suffered by Plaintiff, which included substantial losses in earnings, other employment benefits, and other economic losses, in addition to emotional distress, humiliation, shame, anxiety, depression, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

86. WHEREFORE Plaintiff prays for relief as set forth below.

**FIFTH CAUSE OF ACTION**

**(Retaliation: Violation of Labor Code § 1102.5)**

**(Against Defendant City and County of San Francisco)**

87. Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

88. At all relevant times, Defendant has been subject to the requirements of Labor Code section 1102.5, which applied to Plaintiff as an employee of Defendant.

89. Firefighter Shin engaged in protected activity by reporting and objecting to conduct that he reasonably believed to constitute, and in fact was, the illegal acts of his coworker, Defendant Muhammad. Firefighter Shin reported this conduct both to the SFFD and law enforcement.

90. Firefighter Shin engaged in further protected activity by reporting and objecting to conduct that he reasonably believed to constitute, and in fact was, illegal victim intimidation by the SFFD in violation of Penal Code 131.6.

91. Firefighter Shin also requested accommodation for his serious medical conditions, which is also a protected activity. Govt. Code §§ 12940(l)(4), (m)(2).

92. The City punished Firefighter Shin with a series of adverse employment actions for objecting to the illegal acts of Defendant Muhammad, for objecting to the illegal witness intimidation of his superior officers, for requesting accommodation for his serious medical conditions, and for his reports of these matters to SFFD superior officers who had authority to investigate or correct legal violations, for which he had reasonable cause to believe that the information disclosed violations of state laws, rules, and/or regulations. Plaintiff's objections were contributing factors in Defendant's decision to punish Plaintiff with a series of adverse employment actions, including, but not limited to, placing Plaintiff on unpaid leave status, as well as Defendant's course of conduct that, taken as a whole, materially and adversely affected the terms, conditions, or privileges of Plaintiff's employment

93. Defendant's unlawful actions were a direct, foreseeable, and proximate cause of the harm suffered by Plaintiff, which included substantial losses in earnings, other employment benefits, and other economic losses, in addition to emotional distress, humiliation, shame, anxiety, depression, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

94. WHEREFORE Plaintiff prays for relief as set forth below.

## SIXTH CAUSE OF ACTION

**(Retaliation: Violation of Labor Code §§ 230 (c), (e), and 230.1)**

**(Against Defendant City and County of San Francisco)**

95. Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

96. At all relevant times, Defendant has been subject to the requirements of Labor Code sections §§ 230 (c), (e), and 230.1, which applied to Plaintiff as an employee of Defendant.

97. As detailed above, the City discriminated and retaliated against Firefighter Shin, who is a victim of crime, for taking time off from work to obtain or attempt to obtain relief, including help ensuring his health, safety, and welfare, as well as to seek medical attention for injuries caused by crime or abuse, to obtain psychological counseling or mental health services related to an experience of crime or abuse, and to participate in safety planning and take other actions to increase safety from future crime or abuse, including temporary or permanent relocation.

98. Further, the City discriminated and retaliated against Firefighter Shin because of his status as a victim of crime or abuse. Firefighter Shin provided notice to the City of his status as a victim of crime and abuse, and the City has actual knowledge of the same.

99. Defendant's unlawful actions were a direct, foreseeable, and proximate cause of the harm suffered by Plaintiff, which included substantial losses in earnings, other employment benefits, and other economic losses, in addition to emotional distress, humiliation, shame, anxiety, depression, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

100. WHEREFORE Plaintiff prays for relief as set forth below.

**SEVENTH CAUSE OF ACTION**

**(Race and Color Discrimination: Violation of Government Code § 12940(a))**

**(Against Defendant City and County of San Francisco)**

101. Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

102. At all relevant times herein mentioned, Defendant was an employer and Plaintiff was an employee of Defendant.

103. At all relevant times herein mentioned, the Fair Employment and Housing Act ("FEHA"), Gov. Code, § 12940, *et seq.*, was in full force and effect and was fulling binding upon

Defendant as an employer. Section 12940(a) prohibits an employer from discriminating against an employee because of their race or color.

104. Firefighter Shin has felt the weight of the SFFD's disparate treatment in the wake of being brutally beaten by a coworker. As a Korean American member of the SFFD, race-based mistreatment is something Firefighter Shin has observed within the SFFD. Racial disparities are apparent in the statistical underrepresentation of Asian Americans within the SFFD. Asian Americans represent 37.2% of San Francisco's population.[2] Yet Asian and Pacific Islanders (the SFFD lumps these groups together in demographic analyses) represent only 17.2% of the SFFD.[3] The underrepresentation in the SFFD's management is even more pronounced, with Asian and Pacific Islanders comprising a meager 1.8% of Lieutenants, 1.5% of Captains, and 1.4% of Chiefs. Asian and Pacific Islanders are overrepresented, however, when it comes to SFFD disciplinary action—33% of firefighters suspended in 2020 were Asian and Pacific Islanders.

105. Beyond underrepresentation in higher ranks of the SFFD, the SFFD hosts a workplace culture wherein it is acceptable to express vitriol against the Asian community. This vitriol heightened with the emergence of COVID-19, as certain SFFD members openly and derogatorily referred to COVID-19 as the "kung flu" around Firefighter Shin and made statements such as, "Those Asians are screwing us over. We got it because of them." When Firefighter Shin spoke of the importance of wearing a mask to protect others, another firefighter aggressively yelled that Firefighter Shin was a "fucking piece of shit." The disparate treatment experienced by Firefighter Shin at the hands of the SFFD when he was the victim of a violent crime at the hands of a coworker was informed by the workplace culture of intolerance against the Asian community that the SFFD has fostered and tolerated.

106. When Firefighter Shin was brutally beaten by Firefighter Muhammed (African American), the SFFD did not respond by coming to the aid of the victim of a violent crime and punishing the perpetrator of that crime—a response that would have been logical, reasonable, and just. Instead, the SFFD went to great lengths to protect the violent attacker and absurdly punish

---

[2] https://www.census.gov/quickfacts/sanfranciscocountycalifornia

[3] https://sf-fire.org/files/2021-05/Fire%20Racial%20Equity%20Action%20Plan.pdf

the victim. The SFFD has gone so far as to attempt to interfere with a criminal investigation to cover up the violent crime perpetrated against Firefighter Shin. When Firefighter Shin resisted the hostile pressure and direct order from SFFD superior officers (including three African American supervisors) to cease cooperation with the criminal investigation against Defendant Muhammad, the SFFD punished Firefighter Shin by stripping him of his compensation (an act carried out by O'Connor, who is white).

107. In stark contrast, on information and belief Defendant Muhammad has not missed a single paycheck from the SFFD since attacking Firefighter Shin and has not received any form of discipline for viciously beating a coworker. Because the SFFD knew with sufficient certainty that Muhammad severely beat Shin, it was incumbent upon the SFFD to terminate Muhammad to protect firefighters and the citizens of San Francisco from an individual known to be highly violent and dangerous. Instead, the SFFD has gone to great lengths to protect Muhammad, marshalling the weight of the organization to coerce his victim into silence and thwart the law enforcement action against him. And with the knowledge that Muhammad was being prosecuted for felony assault with a deadly weapon inflicting great bodily injury on Firefighter Shin and was restrained by a criminal protective order from going within 100 yards or having any contact with Firefighter Shin, the SFFD chose to bring Muhammad back into the government workplace on active duty, undisciplined and undeterred from committing further violence against coworkers or the citizens of San Francisco. While Muhammad maintained his pay and his job, the SFFD forced Firefighter Shin to remain away from work without pay if he wished to avoid further violent contact with Muhammad. Through this course of conduct, which is otherwise inexplicable upon a race-neutral rationale, the SFFD ratified Muhammad's violent actions against Shin. The SFFD has undertaken these deplorable actions in substantial part because Firefighter Shin is an Asian victim of violent crime, in keeping with the workplace culture it has fostered.

108. Plaintiff's race and color were substantial motivating reasons for Defendant's decision to subject Plaintiff to adverse employment actions that, taken as a whole, materially and adversely affected the terms, conditions, or privileges of Plaintiff's employment.

109. As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings, other employment benefits, and other economic losses, in addition to emotional distress, humiliation, shame, anxiety, depression, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

110. WHEREFORE Plaintiff prays for relief as set forth below.

## EIGHTH CAUSE OF ACTION

### (Disability Discrimination: Violation of Government Code § 12940(a))

### (Against Defendant City and County of San Francisco)

111. Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

112. At all relevant times herein mentioned, Defendant was an employer and Plaintiff was an employee of Defendant.

113. At all relevant times herein mentioned, the Fair Employment and Housing Act ("FEHA"), Gov. Code, § 12940, *et seq.*, was in full force and effect and was fulling binding upon Defendant as an employer. Section 12940(a) prohibits an employer from discriminating against an employee because of their physical or mental disability.

114. Since being severely beaten, Firefighter Shin has been unable to return to work due to his serious injuries. In addition to the severe physical injuries he sustained, Firefighter Shin was also diagnosed with PTSD resulting from being violently attacked by a coworker and the emotional injury he has suffered by the egregious misconduct of the SFFD. Firefighter Shin communicated the fact that he had been diagnosed with PTSD to Chief of Department Nicholson, Deputy Chief O'Connor, and SFFD investigator Tibbits, among other high ranking SFFD officials. Despite telling these SFFD officials that he was not medically cleared to sit for an off-duty interrogation due to his PTSD diagnosis and requesting for interrogation to be scheduled at a later date, these SFFD officials continued to insist that Firefighter Shin sit for an interrogation. When Firefighter Shin reiterated that he was not medically cleared to sit for an interrogation because he has been diagnosed with PTSD, Deputy Chief O'Connor became irate and yelled at Firefighter Shin that

the SFFD would therefore remove him from paid leave. In contrast, the SFFD has not interrogated Defendant Muhammad even though he is at work on active duty and has continued to pay his compensation. The SFFD stripped Firefighter Shin of his paid leave in substantial part because of his physical and mental injuries.

115. Plaintiff's disabilities were substantial motivating reasons for Defendant's decision to subject Plaintiff to adverse employment actions that, taken as a whole, materially and adversely affected the terms, conditions, or privileges of Plaintiff's employment.

116. As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings, other employment benefits, and other economic losses, in addition to emotional distress, humiliation, shame, anxiety, depression, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

117. WHEREFORE Plaintiff prays for relief as set forth below.

**NINTH CAUSE OF ACTION**

**(Failure to Take All Reasonable Steps to Prevent Discrimination: Violation of Government Code § 12940(k))**

**(Against Defendant City and County of San Francisco)**

118. Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

119. At all relevant times herein mentioned, Defendant was an employer and Plaintiff was an employee of Defendant.

120. At all times herein mentioned, California's FEHA § 12900, *et seq.,* was in full force and effect and was fully binding upon Defendant. Specifically, § 12940(k) makes it an unlawful employment practice for an employer to fail to take all reasonable steps necessary to prevent unlawful discrimination and retaliation from occurring.

121. Plaintiff was subjected to race, color and disability discrimination in the course of his employment, which Defendant failed to take all reasonable steps to prevent.

122. This failure by Defendant was a direct, foreseeable, and proximate cause of the harm suffered by Plaintiff, which included substantial economic losses in addition to emotional distress, humiliation, shame, anxiety, depression, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

123. WHEREFORE, Plaintiff prays for relief as set forth below.

**TENTH CAUSE OF ACTION**

**(Harassment in Violation of Government Code § § 12923, 12940(j))**

**(Against Defendants Nicholson, O'Connor, Certain, and City and County of San Francisco)**

124. Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

125. At all relevant times herein mentioned, SFFD was an employer and Plaintiff was an employee of Defendant. At all relevant times, Defendants were Plaintiff's work supervisors.

126. At all relevant times herein mentioned, FEHA, Gov. Code, § 12940, *et seq.*, was in full force and effect and was fulling binding upon Defendant as an employer. Specifically, section 12940(j)(1) makes the harassment of an employee because of their race, color, or disability unlawful if the entity, or its agents or supervisors, knew or should have known of this conduct and failed to take immediate and appropriate corrective action.

127. SFFD commanding officers with supervisory authority over Firefighter Shin subjected Firefighter Shin to harassment on the basis of his race, color and disability.

128. The hostile environment created by Defendants' conduct was so severe and pervasive that it altered Plaintiff's working conditions.

129. A reasonable person who is Asian and/or suffered from a disability in Plaintiff's circumstances would have considered the work environment to be hostile, intimidating, offensive, oppressive, or abusive. And, in fact, Plaintiff considered it to be so.

130. Defendants Nicholson, O'Connor, and Certain participated in, assisted, and/or encouraged the harassing conduct against Plaintiff.

131. SFFD either directly engaged in the harassment, through its employees, managers, partners, agents and/or assigns, or knew (or should have known) the conduct placed employees at

risk of harassment and, on information and belief, failed to take immediate and appropriate corrective or preventative action, action that was within SFFD's control.

132. Defendants' unlawful actions were a direct, foreseeable, and proximate cause of the harm suffered by Plaintiff, which included emotional distress, humiliation, shame, anxiety, depression, and embarrassment, in addition to economic losses, all to Plaintiff's damage in an amount to be proven at the time of trial.

133. Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

134. WHEREFORE, Plaintiff prays for relief as set forth below.

## ELEVENTH CAUSE OF ACTION

### (Unfair Business Practices in Violation of California Business and Professions Code §§ 17200-17208)

### (Against Defendant City and County of San Francisco)

135. Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

136. The foregoing conduct, as alleged, violates the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*. Section 17200 of the Cal. Bus. & Prof. Code prohibits unfair competition by prohibiting, *inter alia,* any unlawful or unfair business acts or practices.

137. Throughout the course of Plaintiff's employment, Defendant committed acts of unfair competition, as defined by the UCL, by, among other things, engaging in the acts and practices described herein, including but not limited to subjecting Plaintiff to unlawful discrimination.

138. Defendant's conduct as herein alleged has damaged Plaintiff and was substantially injurious to Plaintiff by, among other things, wrongfully suspending Plaintiff without pay and

preventing him from returning to work by knowingly continuing to employ the individual who severely beat Plaintiff and therefore maintaining highly dangerous work conditions.

139. Defendant's course of conduct, acts, and practices in violation of the California laws mentioned above violate the policy or spirit of such laws or otherwise significantly threatens or harms competition.

140. Plaintiff seeks disgorgement in the amount of the respective unpaid wages and all other legal and equitable relief under the UCL.

141. WHEREFORE, Plaintiff prays for relief as set forth below.

**TWELFTH CAUSE OF ACTION**

**(Violation of 42 U.S.C. Section 1983 Racial Discrimination)**

**(Against Defendants Nicholson, Postel, O'Connor, Brown, Certain)**

142. Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

143. Defendant Nicholson, O'Connor, Brown, and Certain acted under color of state law in causing the harm alleged herein.

144. By the conduct alleged herein, defendants Nicholson, Postel, O'Connor, Brown, Certain, and Tibbits willfully and without justification deprived Plaintiff of his rights, privileges and immunities as secured to him by the laws and Constitution of the United States. All Constitutional rights covered, specifically including the due process and equal protection rights as afforded by the 14th (Fourteenth) Amendment in violation of 42 U.S.C. Section 1983.

145. WHEREFORE Plaintiff prays for relief as set forth below.

**THIRTEENTH CAUSE OF ACTION**

**(Violation of 42 U.S.C. Section 1981 Racial Discrimination)**

**(Against Defendants Nicholson, Postel, O'Connor, Brown, Certain, City and County of San Francisco)**

146. Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

147. In doing the acts alleged herein, Defendants intentionally and without justification deprived Plaintiff of the rights, privileges and immunities secured to him by the Constitution and laws of the United States, including Plaintiff's right to be free from discrimination based on his race as provided by 42 U.S.C. Section 1981.

148. Plaintiff's race was a but-for cause for Defendants' decision to subject Plaintiff to adverse employment actions, including, but not limited to, eliminating Plaintiff's compensation and knowingly subjecting him to dangerous working conditions, as well as engaging on a course of conduct that, taken as a whole, materially and adversely affected the terms, conditions, or privileges of Plaintiff's employment.

149. As a direct, foreseeable, and proximate result of Defendants' unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings, other employment benefits, and other economic losses, in addition to emotional distress, humiliation, shame, anxiety, depression, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

150. By perpetrating the acts as alleged in this complaint, defendants acted in conformance with the City's custom, practice and policy of discriminating against Asian Americans.

151. Defendants' conduct as detailed in this complaint violates 42 U.S.C. Section 1981.

152. WHEREFORE plaintiff prays for relief as set forth below.

### FOURTEENTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

### (Against Defendants Muhammad, Nicholson, Postel, O'Connor, Certain, City and County of San Francisco)

153. Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein.

154. The conduct of the City's employees and SFFD superior officers, including Defendants Muhammad, Nicholson, Postel, O'Connor, and Certain, as set forth above, was outrageous and exceeded the boundaries of human decency. This is particularly true here, where aggravating circumstances are present, including the fact that the SFFD superior officer

Defendants abused their positions as Firefighter Shin's supervisors through their conduct described above, positions that gave the superior officer Defendants the power to damage Firefighter Shin's employment interest, as well as by the fact that the superior officer Defendants knew that Firefighter Shin was susceptible to injury through mental distress and acted intentionally or unreasonably with the recognition that their actions were likely to result in illness through mental distress to Firefighter Shin. The City negligently retained Defendant Muhammad knowing that he had severely assaulted and battered fellow City employee, Firefighter Shin. The City also knew a criminal restraining order was and continues to be in effect barring Muhammad from having any contact with Shin and requiring that he remain 100 yards away from Shin. By placing Defendant Muhammad back at work, the City caused substantial harm to Shin, forcing him to either abstain from showing up to work or to show up to work in order to attend to his livelihood and chosen occupation and calling while facing the trauma and potential for deadly injury of having to face his attacker in the workplace in violation of a restraining order.

155. As an actual and proximate result of the wrongful conduct of Defendants, Firefighter Shin has suffered and continues to suffer severe and continuous humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in an amount according to proof at the time of trial.

156. The City is liable for this conduct because the actions or omissions of its employees, Defendant Muhammad and SFFD superior officer Defendants, were within their scope of employment and rise to a cause of action against them. Government Code § 815.2(a).

157. In addition, Defendant Muhammad and the SFFD superior officer Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Firefighter Shin, and acted with an improper and evil motive amounting to malice and in conscious disregard of Firefighter Shin's rights. Because the acts taken toward Firefighter Shin were carried out by Defendant Muhammad and the SFFD superior officer Defendants acting in a deliberate, cold, callous, and intentional manner in order to injure and damage Firefighter Shin, Firefighter Shin is entitled to recover punitive damages from Defendants Muhammad, Nicholson, Postel, O'Connor, and Certain in an amount according to proof.

# REQUEST FOR PUNITIVE DAMAGES

## (California Civil Code Section 3294)

158. Plaintiff incorporates by reference each of the foregoing paragraphs as if they were set forth fully herein.

159. Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others. The conduct of Defendants as alleged herein is extreme and outrageous and falls within the protection of California Civil Code Section 3294 for the imposition of punitive damages against Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, prays for judgment against Defendants as follows:

1. For compensatory damages, including but not limited to, lost back pay, plus interest, lost fringe benefits and future lost earnings and fringe benefits, lost equity, damages for emotional distress and pain and suffering, according to proof allowed by law;

2. For punitive damages allowed by law;

3. For restitution and/or disgorgement;

4. For an award to Plaintiff of costs of suit incurred herein and reasonable attorneys' fees;

5. For an award of prejudgment and post-judgment interest; and

6. For an award to Plaintiff of such other and further legal and equitable relief as the Court deems just and proper.

Dated:  January 31, 2023                                    TORRES & TOLMAN

                                                            By: /s/ James J. Torres
                                                            James J. Torres

                                                            *Attorneys for Plaintiff*

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, plaintiff hereby demands a trial by jury on all issues triable to a jury in each cause of action of his complaint.

Dated: January 31, 2023                                        TORRES & TOLMAN

                                                               By: /s/ James J. Torres
                                                                   James J. Torres

                                                               *Attorneys for Plaintiff*