JAMES J. TORRES, State Bar No. 320192
BENJAMIN J. TOLMAN, State Bar No. 301942
TORRES & TOLMAN
201 Spear Street, Suite 1175
San Francisco, CA 94105
Telephone:   (415) 212-7748
Email:         jtorres@torrestolman.com
               btolman@torrestolman.com

*Attorneys for Plaintiff Gabriel Shin*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL SHIN,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO; ROBERT MUHAMMAD, in his official and individual capacities; JEANINE NICHOLSON in her official and individual capacities; ROBERT POSTEL, in his official and individual capacities; TOM O'CONNOR, in his official and individual capacities; DAVID BROWN, in his official and individual capacities; JOE CERTAIN, in his official and individual capacities; and DOES 1 through 20, inclusive,<br><br>        Defendants. | Case No.  3:23-cv-00456-VC<br><br>**PLAINTIFF GABRIEL SHIN'S OPPOSITION TO DEFENDANTS' CITY AND COUNTY OF SAN FRANCISCO, JEANINE NICHOLSON, ROBERT POSTEL, DAVID BROWN AND JOE CERTAIN'S MOTION TO DISMISS AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S PRAYER AND ANTI-SLAPP REQUEST**<br><br>Date: July 6, 2023<br>Time: 10:00 a.m.<br>Courtroom: 4<br>Judge: Hon. Vince Chhabria |

# <u>TABLE OF CONTENTS</u>

FACTUAL BACKGROUND ...................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

I.    The Motion is Unjustifiably a Motion to Dismiss and Motion to Strike and Unfairly Includes
Non-Detailed "Arguments" That Are Difficult, if Not Impossible, to Refute. ................................. 2

II.   Plaintiff's Claims Should Not be Dismissed. ................................................................................. 3

    a.    Plaintiff Has Sufficiently Pled Claims for Assault and Battery Against CCSF. ............... 3

        1.    CCSF Ratified Muhammad's Assault and Battery of Shin; Public Entities Are Liable
for Acts that They Ratify. ........................................................................................ 3

        2.    CCSF is Also Liable for the Assault and Battery of Shin Through the Doctrine of
*Respondeat Superior*. ........................................................................................ 5

        3.    Plaintiff's Claims Are Not Barred by the Workers' Compensation Exclusivity
Doctrine. ........................................................................................ 7

    b.    Plaintiff has Sufficiently Pled a Claim for Negligence Against CCSF and the Named
Individual Defendants. ........................................................................................ 7

        1.    Plaintiff has sufficiently pled a claim of negligence against the named Individual
Defendants. ........................................................................................ 7

        2.    Because Plaintiff has sufficiently pled a claim for negligence against the named
Individual Defendants, Plaintiff has also done so against CCSF. ........................................ 8

    c.    Plaintiff has sufficiently pled a claim for 42 U.S.C. §1983 Racial Discrimination against
Individual Defendants. ........................................................................................ 9

    d.    Plaintiff has sufficiently pled a claim for 42 U.S.C. §1981 against CCSF and the
Individual Defendants. ........................................................................................ 9

    e.    Plaintiff Has Sufficiently Pled a Claim for Harassment Against CCSF and the Individual
Defendants. ........................................................................................ 10

    f.    Plaintiff has Sufficiently Pled a Claim for Intentional Infliction of Emotional Distress
("IIED") Against CCSF and Individual Defendants. ........................................................ 12

        1.    Plaintiff's IIED Claim is Not Barred by the WCED as the IIED Claim is Based on a
Physical Assault and FEHA-Violative Actions that are Not a Normal Part of the
Employment Relationship. ........................................................................................ 12

        2.    The Acts Above Are Not Protected by Government Employee Immunity................. 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

III.   The Punitive Damages Claims Against the Individual Defendants Should Stand. ................. 14

IV.   The Statements in the Complaint Directly Related to CCSF's Workplace Investigation
Should Also Not Be Stricken Because the Allegations Do Not Arise from Protected Activity. .... 15

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

### FEDERAL CASES

*Avalanche Funding, LLC v. Five Dot Cattle Co.* (No. 2:16-cv-02555-TLN-KJN) 2017
    U.S.Dist.LEXIS 201103 (E.D. Cal. Apr. 27, 2023) ............................................... 3
*Christian v. Umpqua Bank*, 984 F.3d 801 (9th Cir. 2020). ........................................... 11
*Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1999) ........................................................... 10
*Faurie v. Berkeley Unified Sch. Dist.*, No. C 08-0060 THE, 2008 U.S.Dist.LEXIS 108246
    (N.D.Cal. Mar. 25, 2008) ................................................................................... 14
*Fuller v. City of Oakland*, 47 F.3d 1522 (9th Cir. 1995) ........................................ 10, 12
*Intlekofer v. Turnage*, 973 F.2d 773 (9th Cir. 1992). .................................................. 11
*Metoyer v. Chassman*, 504 F.3d 919 (9th Cir. 2007) .................................................... 9
*Naton v. Bank of California*, 72 F.R.D. 550 (N.D. Cal. 1976). ................................... 14
*Prestianni v. Bzclarity/Phantom Sub*, No. 2:08-cv-01536-RCJ-RJJ, 2009 U.S. Dist. LEXIS 149557
    (D. Nev. Nov. 24, 2009) ..................................................................................... 14
*S.G. v. San Francisco Unified Sch. Dist.*, No. 17-cv-05678-EMC, 2018 U.S.Dist.LEXIS 66292
    (N.D.Cal. Apr. 19, 2018). ............................................................................. 3, 4, 5
*Sherman v. Fountain Valley Police Dep't*, No. SACV 17-2217 JVS(DFMx), 2019 U.S.Dist.LEXIS
    171200 (C.D.Cal. Apr. 2, 2019) ......................................................................... 10
*Smith v. Wade*, 461 U.S. 30 (1983) ............................................................................ 14

### CALIFORNIA CASES

*C.A. v. William S. Hart Union High Sch. Dist.,* 53 Cal. 4th 861 (2012) ....................... 9
*C.R. v. Tenet Healthcare Corp.*, 169 Cal.App.4th 1094 (2009) ................................. 3, 4
*Caldwell v. Montoya*, 10 Cal. 4th 972 (1995) ............................................................... 8
*City of Los Angeles v. Superior Court* (1973) 33 Cal.App.3d 778 ................................. 4
*Coats v. Construction & Gen. Laborers Local No. 185* (1971) 15 Cal.App.3d 908 .......... 4, 5
*Commodore Home System, Inc. v. Superior Court*, 32 Cal.3d 21 (1982) ...................... 14
*Farmers Ins. Group v. County of Santa Clara*, 11 Cal.4th 992 (1995). ...................... 5, 6
*Fermino v. Fedco, Inc.*, 7 Cal. 4th 701 (1994) ............................................................ 12
*Guz v. Bechtel National, Inc.* 24 Cal. 4th 317, 354
*Hart v. Nat'l Mortg. & Land Co.*, 189 Cal. App. 3d 1420, 1427 (1987). ................. 7, 13
*Johnson v. State of Cal.*, 69 Cal. 2d 782 (1968) ............................................................ 7
*Light v. Department of Parks & Recreation*, 14 Cal.App.5th 75 (2017) ...................... 13
*Lopez v. Southern Cal. Rapid Transit Dist.*, 40 Cal.3d 780 (1985). ....................... 7, 13
*Nazir v. United Airlines, Inc.*, 178 Cal.App.4th 243 (2009) ...................................... 11
*Ratcliff v. The Roman Catholic Archbishop of Los Angeles,* 79 Cal.App.5th 982, 1003 (2022)
    ............................................................................................................... 3,4,15
*Roby v. McKesson Corp.*, 47 Cal. 4th 686 (2009).......................................................... 14
*Skelton v. Pac. Lumber Co.*, 140 Cal. 507 (1903) ......................................................... 8
*Taylor v. City of L.A. Dep't of Water & Power*, 144 Cal. App. 4th 1216 (2006) ......... 7, 8
*Ventura v. ABM Industries Inc.* 212 Cal.App.4th 258 (2012) .................................. 3, 4

### FEDERAL STATUTES

42 U.S.C. §1981 ............................................................................................................ 9
42 U.S.C. §1983 ............................................................................................................ 9

1

### CALIFORNIA STATUTES

FEHA § 12923(a) ................................................................................................ 12

FEHA § 12923(a). ............................................................................................... 11

FEHA § 12940(e) ................................................................................................ 11

FEHA § 12940(j)(1); ........................................................................................... 12

Government Code section 820.2 .................................................................. 7, 13

Government Code section 821.6 ........................................................................ 15

2
3
4
5
6

### MISCELLANEOUS

California Civil Jury Instructions 3710 Ratification ........................................... 4

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## **FACTUAL BACKGROUND**

2          Plaintiff Gabriel Shin is a Korean American and a U.S. Army veteran who proudly served

3  the community of San Francisco as a firefighter for over 27 years. Dkt. No. 1 ("Complaint" or

4  "Compl."), ¶ 1, 32. (All citations to "¶" or "¶¶" are citations to the Complaint, unless stated

5  otherwise). In February 2022, San Francisco Fire Department's ("SFFD") Robert Muhammad,

6  also a firefighter, violently attacked Firefighter Shin over a workplace grievance immediately after

7  they both left work. ¶¶ 1, 4, 65, 67. After referencing the workplace grievance, Muhammad used

8  an SFFD fire hydrant wrench to repeatedly strike Firefighter Shin, breaking his arm and giving

9  him a concussion as he aimed for Shin's head. ¶¶ 4, 28, 29. Muhammad was charged with felony

10  assault and subject to a restraining order to have no contact with Shin. ¶¶ 4, 61.

11          High-ranking SFFD officials knew Muhammad had a long history of threatening behavior

12  toward coworkers, yet failed to take any corrective action. ¶¶ 33-38. And when SFFD officials

13  learned that Muhammad was making direct threats of violence against Firefighter Shin in the days

14  leading up to the attack, the SFFD refused to act. ¶¶ 33, 39-45. SFFD officials permitted

15  Muhammad to remain at the firehouse without so much as a word to discourage his planned attack.

16  ¶¶ 3, 45, 66. While at work, Muhammad used an SFFD database to locate Shin's home address

17  and schedule, information crucial in planning his attack because he otherwise did not have access

18  to such information, as he and Shin had no connection outside of work. ¶¶ 3, 45, 65, 66.

19  Muhammad also used this time afforded by the SFFD to select his deadly weapon: an SFFD large

20  brass wrench used to pry open fire hydrants. *Id.*

21          The Chief of the SFFD, Defendant Nicholson, and her high-ranking officers, Defendants

22  Postel, O'Connor, Brown, and Certain ("Deputies"), know all of the above-stated facts. ¶¶ 5, 8,

23  33, 46, 47, 51, 54, 55. With this knowledge, they never issued any form of discipline against

24  Muhammad. ¶¶ 5, 33, 61, 107. Instead, they chose to bring him back to work, undisciplined and

25  undeterred from committing further acts of violence against firefighters and citizens. *Id.*

26  Muhammad has not missed a single publicly funded paycheck since attacking Firefighter Shin. *Id.*

27          In stark contrast, Shin had to remain away from work to avoid coming into contact with

28  Muhammad—a work condition created by Nicholson and her Deputies. ¶¶ 6, 61, 107. Nicholson

and her Deputies went so far as to attempt to interfere with a criminal investigation to cover up the violent crime perpetrated against Shin. ¶¶ 6, 106. Nicholson and Postel refused to share information vital to apprehending Muhammad with law enforcement. ¶¶ 49, 50. Postel banned Shin from entering SFFD property and banned firefighters from communicating with Shin on threat of punishment. ¶ 53. Three SFFD officers pressured Shin to cease cooperation with the criminal investigation against Muhammad and defended his actions, including Defendant Certain a day after the attack. ¶ 51. When Shin resisted this pressure, Certain became irate and yelled at Shin with a direct order to end his cooperation with law enforcement. *Id.* Defendant Brown defended this conduct and further participated in the creation of a false report to downplay Shin's warnings about Muhammad prior to the attack. ¶¶ 52, 54. Shin also informed Nicholson and her Deputies that he was diagnosed with PTSD and was not medically cleared to sit for an interview at work. ¶¶ 56, 57. In response, Defendant O'Connor became irate and yelled at Shin, after which Chief Nicholson and her Deputies stripped Shin of his compensation and took away his health insurance before the broken bones in his arm had even set. ¶ 57. In short, Chief Nicholson and her Deputies went to great lengths to protect the attacker and punish an innocent firefighter who was almost killed. ¶ 7. They retaliated and discriminated against Firefighter Shin, unleashing a torrent of harassment designed to silence and ultimately force Shin out of the SFFD due to his status as an Asian victim of violent crime suffering from serious medical conditions. *See, e.g.,* ¶¶ 7-8, 127.

## **ARGUMENT**

### I. **The Motion is Unjustifiably a Motion to Dismiss and Motion to Strike and Unfairly Includes Non-Detailed "Arguments" That Are Difficult, if Not Impossible, to Refute.**

First, Defendants unfairly combined a motion to dismiss and a motion to strike into one vehicle, forcing Plaintiff to use one opposition to address a myriad of issues that should have been addressed with more space. Second, Defendants made the task of responding quite difficult—if not impossible—because the Motion will often cite to law or make a statement about the law, but not provide any argument or state clearly why (or even if) such propositions are relevant to the Motion. The result is a hodgepodge of potential legal arguments that are difficult (or impossible) to oppose as it is not clear exactly what one is opposing. This lack of detail is unfair, is not proper notice, and

thus the Motion fails. *See, e.g., Avalanche Funding, LLC v. Five Dot Cattle Co.* (No. 2:16-cv-02555-TLN-KJN) 2017 U.S.Dist.LEXIS 201103, at *8. (E.D. Cal. Apr. 27, 2023) ("In the context of a motion to dismiss, the burden is on the defendant to prove that the plaintiff failed to state a claim" and defendant failed by making "sweeping, broad generalizations as to each claim" instead of "explain[ing] how Plaintiff fails to plead the necessary elements for each cause of action").

**II.**   <u>**Plaintiff's Claims Should Not be Dismissed**</u>.

**a.  Plaintiff Has Sufficiently Pled Claims for Assault and Battery Against CCSF.**

Plaintiff's Complaint sufficiently pleads CCSF's liability for assault and battery on the basis of two theories: ratification and respondeat superior. We discuss each in turn.

**1.  CCSF Ratified Muhammad's Assault and Battery of Shin; Public Entities Are Liable for Acts that They Ratify.**

"As an alternate theory to *respondeat superior*, an employer may be liable for an employee's act where the employer either authorized the tortious act or subsequently ratified an originally unauthorized tort." *C.R. v. Tenet Healthcare Corp.*, 169 Cal.App.4th 1094, 1111 (2009). "Ratification is a permeation of the law of agency . . . . Agency allegations are subject to general pleading requirements." *Id.*  at 1112. "Ratification is not an element of a claim; it is a choice to adopt someone's act as one's own." *Ratcliff v. The Roman Catholic Archbishop of Los Angeles,* 79 Cal.App.5th 982, 1003 (2022).

Employer liability is established through ratification if the employer, after learning of the employee's conduct after it occurred, approved the employee's conduct, which "[a]pproval can be shown through words, or it can be inferred from a person's conduct." *Ventura v. ABM Industries Inc.* 212 Cal.App.4th 258, 271 (2012) (upholding jury instruction on ratification stating only these requirements as "correctly stat[ing] the law"). An act can thus be ratified "expressly or 'by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred.'" *S.G. v. San Francisco Unified Sch. Dist.*, No. 17-cv-05678-EMC, 2018 U.S.Dist.LEXIS 66292, at *10-11 (N.D.Cal. Apr. 19, 2018) (hereinafter "S.G."). Subsequent ratification of an originally unauthorized tort is "generally applied where an employer fails to investigate or respond to charges that an employee committed an intentional tort, such as

assault or battery" (*Ratcliff,* 79 Cal.App.5th at 1002) or when "an employer learns of misconduct and fails to discharge an agent or employee" (*C.R.,* 169 Cal.App.4th at 1110-1111). Ratification does not require that the employee intended to act on behalf of the employer or that the employer benefited from the conduct. *Ventura*, 212 Cal.App.4th at 271; *see also* California Civil Jury Instructions 3710 Ratification ("[I]t is not necessary for the culpable employee to purport to act on behalf of the employer" (citing *Ventura*).

Governmental entities may be found liable for the tortious conduct of their employees through ratification. *See, e.g., City of Los Angeles v. Superior Court* (1973) 33 Cal.App.3d 778, 782–783 (citing *Coats v. Construction & Gen. Laborers Local No. 185* (1971) 15 Cal.App.3d 908, 914 for principle that an employer is responsible for the willful and malicious acts of an employee which the employer ratified by "willfully continuing to employ an individual of known violent propensities" and applying this principle in action for battery against city); *S.G.* at *10-13 (denying dismissal based on San Francisco's ratification of sexual assault of minor for its initial inaction against assailant employee, even though it eventually placed assailant on administrative leave).

In *Coats*, the court upheld a jury verdict finding an employer liable for battery committed by its employee against a coworker. 15 Cal.App.3d 908 (1971). This battery, in which the employee "without any provocation . . . attacked [the coworker] and struck him four blows in the face, knocking him to the floor each time" such that "one of Plaintiff's eyes was closed and he was quite bloody," occurred after work at a bar outside of the workplace. *Id.* at 911-12. The court found that the employer ratified the battery committed by its employee. Relevant to this finding was the court's observation that the employer did not repudiate the employee's actions after its investigation found that the altercation was a "personal matter between the participants," as well as the fact that, although the plaintiff kept his job, the employer reduced his work hours such that he did not qualify for health benefits and by further intimidating plaintiff. *Id.* at 912-14.

Here, the Complaint sufficiently alleges that CCSF ratified Muhammad's assault and battery of Shin, including through paragraph 69, detailing that CCSF, with full knowledge of Muhammad's assault and battery of Shin, took various adverse employment actions against Shin for reporting Muhammad's attack, while "fail[ing] to discharge, censure, criticize, suspend, sanction, or

otherwise take action." *S.G.* at *11-13. CCSF went far beyond inaction with by affirmatively defending, condoning, and protecting Muhammad, while punishing Shin by using the full weight of their managerial authority to hostilely and abusively pressure him to cease cooperation with law enforcement and by creating work conditions wherein Shin would have to risk his life by working with Muhammad in violation of a criminal restraining order.

## 2. CCSF is Also Liable for the Assault and Battery of Shin Through the Doctrine of *Respondeat Superior*.

"[S]cope of employment has been interpreted broadly under the respondeat superior doctrine. For example, the fact that an employee is not engaged in the ultimate object of his employment at the time of his wrongful act does not preclude attribution of liability to an employer." *Farmers Ins. Group v. County of Santa Clara*, 11 Cal.4th 992, 1004 (1995) (internal quotations omitted). "It is also settled that an employer's vicarious liability may extend to willful and malicious torts of an employee as well as negligence. Finally, an employee's tortious act may be within the scope of employment even if it contravenes an express company rule and <u>confers no benefit to the employer</u>." *Id.* (emphasis added). The California Supreme Court further explained:

> Vicarious liability may also be proper . . . even though the conduct is not intended to benefit the employer or to further the employer's interests. (*E.g., Fields v. Sanders* (1947) 29 Cal. 2d 834 (employee truck driver beat motorist with wrench during dispute over employee's driving on a company job); *Carr v. Wm. C. Crowell Co.*, [] 28 Cal. 2d 652 [(1946)] (employee of general contractor threw hammer at subcontractor during dispute over construction procedure).) Vicarious liability may even be appropriate for injuries caused after work hours where a dispute arises over the rights and privileges of off-duty employees. (*Rodgers* [*v. Kemper Constr. Co.* (1975)] 50 Cal. App. 3d 608 [] (injuries inflicted by off-duty employees of general contractor during dispute over right to use subcontractor's equipment).) *In these types of situations, the tortious actions are engendered by events or conditions relating to the employment and therefore are properly allocable to the employer.*

*Id.* at 1006 (emphasis added). "Whether an employee is acting within the scope of his employment or authority is an issue that involves the determination of several factors, among others, whether his conduct was authorized by his employer, either expressly or impliedly . . . and many other things besides the time and place of performance of his duties as an employee." *Coats*, 15 Cal.App.3d at 913 (Upholding employer liability for employee's battery of coworker <u>outside of the workplace</u> and after working hours, explaining that "[w]hether the fact that the battery occurred away from the

1    Union building [employer's property] would permit the Union [employer] to contend that it was

2    done without its authority is immaterial.").

3           Here, the assault and battery of Shin were within the scope of employment under *respondeat*

4    *superior*. The Complaint details that Muhammad's assault and battery of Shin were motivated solely

5    by a workplace grievance that he had with Shin and that their only connection was through the

6    workplace. ¶ 65; *see also* ¶¶ 1, 11, 39, 40, 73. CCSF not only had direct knowledge of Muhammad's

7    years of threatening behavior toward supervisors and coworkers in the workplace and failed to take

8    any corrective action (¶¶ 2, 34-38), but also knew of the direct threat he posed to Firefighter Shin in

9    threatening to physically harm him and a coworker over a workplace dispute (¶¶ 39-45). With this

10   knowledge, CCSF allowed him to remain at work up to the morning of the attack and use a work

11   database to locate Shin's home address and schedule, as well as acquire the deadly weapon perfectly

12   suited for his attack. ¶¶ 3, 45, 65-67. Moreover, in a statement made to the press on behalf of the

13   SFFD, Defendant Nicholson acknowledged that Muhammad's attack of Firefighter Shin is a work-

14   related matter by publicly announcing that it is an "HR matter" internal to the SFFD. *Id.* ¶ 68. And

15   a high-ranking SFFD chief spoke directly to Firefighter Shin and acknowledged that the SFFD was

16   responsible for the harm he suffered at the hands of Muhammad, explaining that "the SFFD knew

17   of Muhammad's history of misconduct and had the SFFD properly acted on this knowledge,

18   Firefighter Shin would have never been harmed by the SFFD's employee over a workplace dispute."

19   *Id.* ¶¶ 62, 68.

20          Defendants ignore these specifically pled facts to claim that Shin's allegations are

21   "conclusory." Motion at 7:23-25. However, Defendants' entire argument amounts to its own

22   unsupported conclusion that Muhammad's assault and battery "clearly were not" within the scope

23   of employment, incongruously citing to Complaint paragraph 105 (dealing with discrimination)

24   without saying more. *Id.* Given the Complaint's highly detailed allegations described above, Shin

25   has sufficiently pled that Muhammad's assault and battery of Firefighter Shin were "engendered

26   by events or conditions relating to the employment and therefore are properly allocable to the

27   employer." *Farmers Ins. Group v. County of Santa Clara*, 11 Cal.4th 992, 1006 (1995).

28

1

### 3. Plaintiff's Claims Are Not Barred by the Workers' Compensation Exclusivity Doctrine.

2

3       In a footnote (Mot. at 6, n.2), Defendants reserve the right to argue that Plaintiff's claims

4   are barred by the Workers' Compensation Exclusivity Doctrine (the "WCED"). But this

5   argument—if made—fails. The WCED does not apply in this context because the assault and

6   battery were merely "incidental of the employment relationship", as opposed to a "normal part of

7   the employment relationship" given that it was ratified by CCSF, and as such is not covered by the

8   WCED. *See, e.g., Hart v. Nat'l Mortg. & Land Co.*, 189 Cal. App. 3d 1420, 1427, 1432 (1987).

9       ### b. Plaintiff has Sufficiently Pled a Claim for Negligence Against CCSF and the Named Individual Defendants.

10
11          #### 1. Plaintiff has sufficiently pled a claim of negligence against the named Individual Defendants.

12       Defendants' Motion argues otherwise, stating that Defendants Nicholson, O'Connor, Postel,

13   and Brown are not liable for these negligence claims as the actions underlying these claims were

14   discretionary in nature and thus immune to such causes of action under Government Code section

15   820.2.[1] But the actions alleged to have been taken (or not taken) are ministerial rather than

16   discretionary and thus are not immunized under Government Code section 820.2.

17       For immunity to apply, Defendants "must show that the decisions in question are . . . basic

18   policy decisions made at the *planning stage* of the entity's operations, rather than routine duties . . .

19   ." *Taylor v. City of L.A. Dep't of Water & Power*, 144 Cal. App. 4th 1216, 1238-39 (2006) (citations

20   and quotation marks omitted) (emphasis added). There is no basis for immunizing decisions that

21   merely implement a basic policy already formulated. *Johnson v. State of Cal.*, 69 Cal. 2d 782, 796

22   (1968). In short essence, the immunity granted under Section 820.2 "serves . . . to assure that courts

23   refuse to pass judgment on policy decisions in the province of coordinate branches of government."

24   *Id.* at 794, fn. 8. "In governmental tort cases, the rule is liability, immunity is the exception." *Lopez*

25   *v. Southern Cal. Rapid Transit Dist.*, 40 Cal.3d 780, 792 (1985).

26

27       [1] Like many of its arguments, this argument is also devoid of any real analysis and a lack of
factual particularity so as to be able to properly assess the defense being made. As such, the
28   defense is deficient and should be denied. *See* Section I *supra*.

In the case at bar, the allegations for negligence essentially stem from failing to supervise and otherwise continuing to retain Defendant Muhammad despite his known aggressive history and dangerous propensities; the failure to warn Shin about Muhammad's dangerous and aggressive propensities and/or otherwise protect Shin by properly securing his confidential information, including his home address; the failure to properly train, supervise, and monitor how its employees handled the aftermath of the assault on Shin; and the continued retention of Muhammad despite the brazen and potentially deadly attack on his fellow coworker.[2]  In other words, the allegations are failing to properly supervise; warn; investigate; and hire/retain employees. These kinds of acts are not discretionary broad policy decisions conducted by a coordinate branch of government, but are ministerial acts of CCSF employees in the ordinary course of their day-to-day employment that are properly rejected for claims of immunity. *See Caldwell v. Montoya*, 10 Cal. 4th 972, 981-82 (1995) (collecting cases finding that California courts have rejected claims for immunity on an employee's decision not to intervene in an assault; failure to warn of known crime dangers; a university therapist's failure to warn a patient's homicide victim of the patient's threats; and a police officer's negligent conduct of an investigation once that investigation was undertaken) (citations omitted); *see also Taylor v. City of L.A. Dep't of Water & Power*, 144 Cal. App. 4th 1216, 1239 (2006) ("job assignments, training and promotion" are not "quasi-legislative policy-making decision[s]").

**2. Because Plaintiff has sufficiently pled a claim for negligence against the named Individual Defendants, Plaintiff has also done so against CCSF.**

Because the Individual Defendants performed negligent acts, and these acts were within the scope of their employment with CCSF, CCSF is liable for those acts. Government Code section 815.2 clearly states that a "public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would,

---

[2] The Motion also attempts to assert that the Complaint is deficient because it only attributes duty, breach and proximate cause of Shin's injuries "to the City only." Mot. at 8:26-9:2. This is false. The cause of action for negligence is clearly against "All Defendants" and CCSF's duties extend to its employees acting as agents of the public entity. *See Skelton v. Pac. Lumber Co.*, 140 Cal. 507, 512 (1903) (defendant lumber company had a duty to ensure safe working conditions for its employees, and it was thus a supervisor's "duty to exercise due and reasonable care for the safety of the defendant's employees. His failure so to do was the defendant's failure . . . .").

apart from this section, have given rise to a cause of action against that employee or his personal representative." As argued in the section immediately above, employees of the public entity performed negligent acts within the scope of their employment. CCSF is therefore liable. *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 879 (2012).

**c. Plaintiff has sufficiently pled a claim for 42 U.S.C. §1983 Racial Discrimination against Individual Defendants.**

Defendants' argument is strictly this:

> [T]he assault as alleged by Plaintiff was criminal in nature, not foreseeable, lacked personal involvement on the part of the Individual Defendants, and cannot be attributed to the Individual Defendants under a respondeat superior theory of liability. As such, this claim fails and should be appropriately dismissed.

This argument is based on a fundamental misconception. This claim is not based upon Muhammad's assault and battery of Shin. Indeed, Muhammad is not even subject to this claim for discrimination. Rather, this claim is based upon the actions of Defendants Nicholson, Postel, O'Connor, Brown, and Certain following the attack, as detailed further in Section II.d. below. Defendants' entire contention stems from a fundamental misunderstanding of the allegations and should thus be denied.

**d. Plaintiff has sufficiently pled a claim for 42 U.S.C. §1981 against CCSF and the Individual Defendants.**

Defendants base their dismissal of Plaintiff's Section 1981 claim entirely on the contention that Plaintiff did not plead "discriminatory intent." Mot. 12:11-13:9. Plaintiff has sufficiently pled discriminatory intent. Discriminatory intent required in a Section 1981 claim is essentially the same required in FEHA discrimination claims, the sufficiency of which Defendants do not challenge. *See Metoyer v. Chassman*, 504 F.3d 919, 930-31 (9th Cir. 2007) (§ 1981 discrimination claims assessed akin to Title VII, 42 U.S.C. § 2000e); *Guz v. Bechtel National, Inc.* 24 Cal. 4th 317, 354, 100 Cal. Rptr. 2d 352, 8 P.3d 1089 (2000) (For FEHA claims, "California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination.").

Despite mischaracterizing the allegations surrounding discriminatory intent as limited to workplace culture, Defendants confusingly state that Plaintiff also relies on statistics to establish discriminatory intent. Plaintiff's allegations are not so limited. The Complaint is highly detailed

with specific facts establishing discrimination. *See, e.g.,* ¶¶ 106-107 (summarizing discriminatory disparate treatment of Shin and Muhammad); *see also,* ¶¶ 104-105, 146-151. Beyond the fact that the discriminatory acts taken against Shin were jointly undertaken by Defendants Nicholson, Postel, O'Connor, Brown, Certain, and CCSF as co-conspirators (*e.g.,* ¶ 19), the Complaint details the specific wrongdoing under this cause of action. For a summary of these facts, please see the Factual Background section above at 1:21-2:18. These detailed acts of wrongdoing are alleged against Defendants holding positions at the highest levels of the SFFD, including Chief of Department Nicholson, who both directly undertook and directed the discriminatory adverse employment actions against Plaintiff and otherwise affirmatively ratified the discriminatory actions taken by her subordinate officers. *See, e.g., Sherman v. Fountain Valley Police Dep't*, No. SACV 17-2217 JVS(DFMx), 2019 U.S.Dist.LEXIS 171200, at *27 (C.D.Cal. Apr. 2, 2019) (policy or custom may be established through evidence that individual tortfeasor was an official policy authority); *Christie v. Iopa*, 176 F.3d 1231, 1240 (9th Cir. 1999) (ratification where failure to discipline along with after-the-fact conduct indicating official agreed with subordinate's conduct).

Defendants' sole argument against Section 1981 liability for "Individual Defendants" is the following: "For the same reasons that Plaintiff's race-based harassment claims fail, so too does this Section 1981 claim." Mot. at 13:18-19. Although Plaintiff has sufficiently pled a harassment claim (*see* Section I.e. below), harassment requires a heightened showing beyond discrimination and is therefore not a proper barometer for a Section 1981 claim. For this reason alone, Defendants' request for dismissal against "Individual Defendants" should fail. However, Plaintiff has articulated a sufficient claim under Section 1981 against all named Defendants, as detailed above.

**e. Plaintiff Has Sufficiently Pled a Claim for Harassment Against CCSF and the Individual Defendants.**

The Fair Employment and Housing Act ("FEHA") makes it unlawful for an employer to harass an employee because of their race, color and disability. Section 12940(j)(1). "An entity shall take all reasonable steps to prevent harassment from occurring." *Id.* If "no remedy is undertaken . . . liability will attach." *Fuller v. City of Oakland*, 47 F.3d 1522, 1529 (9th Cir. 1995) (internal citation

1    omitted). Further, "harassment is to be remedied through actions targeted at the harasser, not at the

2    victim." *See Intlekofer v. Turnage*, 973 F.2d 773, 780 n.9 (9th Cir. 1992).

3           There is no bright line test for what constitutes harassment. The general standard is that the

4    "totality of the circumstances" must be evaluated and found that they create a circumstance where

5    a "reasonable person subjected to the discriminatory conduct would find . . . that the harassment so

6    altered working conditions as to make it more difficult to do the job[.]" FEHA § 12923(a). A single

7    incident can be sufficient. FEHA § 12923(b). Harassment cases are also rarely appropriate for

8    disposition on summary judgment—let alone a motion to dismiss—and generally involve issues that

9    are "not determinable on paper." *See Nazir v. United Airlines, Inc.*, 178 Cal.App.4th 243, 286

10   (2009); FEHA § 12940(e).

11          In *Christian v. Umpqua Bank*, a bank customer dropped off flowers and "small notes" stating

12   that plaintiff was "beautiful", a "dream girl", his "soul mate", and that he wanted to go on a date.

13    984 F.3d 801, 806 (9th Cir. 2020). Seven months passed with no contact with plaintiff, but the

14   customer continued saying to plaintiff's coworkers that he planned to ask her out. *Id.* The customer

15   then appeared at a work-related event and again at plaintiff's office a few days later and stared at

16   plaintiff. *Id.* The bank eventually closed the customer's account and told him to not return. Plaintiff

17   then resigned a few weeks later. *Id.* The court ruled "[t]he evidence is more than sufficient to create

18   a triable issue as to whether the harassment was sufficiently severe or pervasive to alter the

19   conditions of [plaintiff]'s employment." *Id.* at 811.

20          Contrary to Defendants' straw man analysis of the Complaint (*see* Mot. 10:15-24), Plaintiff

21   has set forth highly detailed allegations attributing harassment to Defendants Nicholson, O'Connor,

22   Certain, and CCSF that is far more severe than the conduct stated in *Umpqua Bank*. Defendants took

23   part in a joint effort to unleash a torrent of harassment so severe and pervasive that they intentionally

24   forced Shin to resign. *See, e.g.,* Complaint ¶¶ 7, 8, 61. For example, in their concerted effort to

25   pressure Shin to end his cooperation with law enforcement, Defendant Certain called Plaintiff *the*

26   *day after the attack* to defend Muhammad's actions, repeatedly tell Plaintiff that he would not press

27   charges, and, in the face of Plaintiff's resistance, become irate and yell a direct order to stop

28   cooperating with law enforcement. *Id.* ¶ 52. And when Plaintiff informed Defendant O'Connor that

he had been diagnosed with PTSD, O'Connor became irate and yelled at Plaintiff that he would remove him from paid leave, a threat that he and his cohorts carried out. *Id.* ¶¶ 57, 60. These acts and much more were done by Defendant Nicholson's design to silence and ultimately force Shin out of the SFFD because of his status as an Asian victim of violent crime suffering from serious medical conditions known to Defendants. *See, e.g.,* ¶¶ 7-8, 127.

Defendants are also liable because they failed in their duty to take "immediate and appropriate corrective action" after the first incident of harassment. FEHA § 12940(j)(1); *see also Fuller*, 47 F.3d at 1528-29 (internal citation omitted) ("If 1) no remedy is undertaken, or 2) the remedy attempted is ineffectual, liability will attach.") Defendants took no action to remedy the hostile acts reported by Plaintiff to Defendant Nicholson, but rather doubled down by continuing the pressure to cease law enforcement cooperation (Compl. ¶ 52), stripped Plaintiff of his compensation and medical insurance immediately following O'Connor's hostile threat (¶ 60), and invited Muhammad to continue working knowing this would cause a violation of Plaintiff's restraining order and that Plaintiff could not return to work for fear of his life (¶¶ 61, 154). The totality of these circumstances would doubtless make a reasonable Asian firefighter suffering from PTST who had nearly been killed by a coworker find the harassment to have altered his working conditions such that it was, understatedly, "more difficult to do the job." FEHA § 12923(a).

### f. Plaintiff has Sufficiently Pled a Claim for Intentional Infliction of Emotional Distress ("IIED") Against CCSF and Individual Defendants.

Defendants challenge Plaintiff's IIED claims on the ground that such claims are barred by the Workers' Compensation Exclusivity Doctrine (the "WCED") and are barred by immunity under Government Code section 820.2. Mot. at 13:24-14:15. They are not. Plaintiff addresses each in turn.

### 1. Plaintiff's IIED Claim is Not Barred by the WCED as the IIED Claim is Based on a Physical Assault and FEHA-Violative Actions that are Not a Normal Part of the Employment Relationship.

In its exegesis on the topic, the California Supreme Court held that injuries that arise from "intentional employer conduct which bring the employer beyond the boundaries of the compensation bargain" are not subject to the WCED and thus a "civil action may be brought" for such claims. *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 713-14 (1994). Behavior that falls "beyond the

1   boundaries of the compensation bargain" generally includes intentional torts, which are beyond "a

2   normal part of the employment relationship", with normal being "demotions, promotions, criticism

3   of work practices" and the like. *See Hart v. Nat'l Mortg. & Land Co.*, 189 Cal. App. 3d 1420, 1429

4   (1987). Similarly, IIED actions that are rooted in FEHA violations are also outside of the normal

5   employment relationship. *Light v. Department of Parks & Recreation*, 14 Cal.App.5th 75, 101

6   (2017) ("unlawful discrimination and retaliation in violation of FEHA falls outside the

7   compensation bargain" as are IIED claims "based on such discrimination and retaliation").

8         Given that the IIED claims at issue are derivative of intentional torts and FEHA claims, they

9   are not part of the "normal employment relationship."  To begin with, as argued above, the assault

10  and battery was ratified, as was the intentional infliction of emotional distress that accompanied it,

11  meaning it falls outside of the normal employment relationship. *See Hart*, 189 Cal. App. 3d at 1427

12  (holding that claims of assault and battery committed by an employee, and attributable to the

13  employer, are not covered by the WCED). As to the other aspects of IIED caused by the individuals

14  named, these IIED claims are clearly based on FEHA violative activity. *Compare* Complaint at ¶154

15  (broadly describing certain IIED conduct) *with* ¶¶ 80-85; 101-134 (describing FEHA causes of

16  action that overlap with the IIED claims and form the basis for them). Given that there is almost (if

17  not complete) overlap between the claims that form the basis of the IIED and the FEHA claims, and

18  the fact that "unlawful discrimination and retaliation in violation of FEHA falls outside the

19  compensation bargain" (*Light* at 101), the IIED claims are not subject to the WCED.

20            **2.  The Acts Above Are Not Protected by Government Employee Immunity.**

21        The Motion (apparently) argues the IIED claim is invalid because the acts are immune

22  discretionary acts under Government Code § 820.2. Mot. at 14:9-10. But, as argued in Section

23  II.b.1., the acts are not discretionary acts. In order to make them such, Defendants would have to

24  show that they "*consciously exercised discretion* in the sense of assuming certain risks in order to

25  gain other policy objectives." *Lopez v. S. Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 794 (1985). They

26  did not, nor could they. What policy objectives are possibly served by not disclosing information to

27  law enforcement, or by witness intimidation, or by the continued retention of the known assailant?

28

1  Nor can policy objectives be served through FEHA violations. *See, e.g., Faurie v. Berkeley Unified*

2  *Sch. Dist.*, No. C 08-0060 THE, 2008 U.S.Dist.LEXIS 108246, at *40 (N.D.Cal. Mar. 25, 2008).

3  **III.**     **The Punitive Damages Claims Against the Individual Defendants Should Stand.**

4          Contrary to the Motion's arguments that Plaintiff only "makes conclusory assertions" that

5  Defendants acted with the requisite behavior to make them liable for punitive damages, the record

6  is replete with pled facts that Defendants acted with malice or oppression towards Plaintiff. Given

7  this, the punitive damages claims against the Individual Defendants should stand.

8          Motions to strike are disfavored and should not be granted unless it is clear that the matter

9  to be stricken can have no possible bearing upon the subject matter of the litigation. *Naton v. Bank*

10 *of California*, 72 F.R.D. 550 (N.D. Cal. 1976). Punitive damages are appropriate for actions

11 associated with discriminatory conduct, like that found here. *Commodore Home System, Inc. v.*

12 *Superior Court*, 32 Cal.3d 21, 216-221 (1982) (punitive damages appropriate under FEHA); *Smith*

13 *v. Wade*, 461 U.S. 30, 56 (1983) ("permitted to assess punitive damages in an action under § 1983").

14         Here, the Complaint alleges facts that would enable a jury to conclude that the Individual

15 Defendants acted with malice or oppression, specifically as articulated in Sections II.c. (§ 1983),

16 II.d. (§ 1981), II.e. (Harassment), and II.f. (IIED) *supra*. *See, e.g., Roby v. McKesson Corp.*, 47 Cal.

17 4th 686 (2009) (punitive damages appropriate for supervisor who engaged in FEHA harassment);

18 *Prestianni v. Bzclarity/Phantom Sub*, No. 2:08-cv-01536-RCJ-RJJ, 2009 U.S. Dist. LEXIS 149557,

19 at *29 (D. Nev. Nov. 24, 2009) (punitive damages appropriate against individual supervisor for IIED

20 allegations stemming from battery); *Smith*,  461 U.S. at 51 (1983) (punitive damages appropriate

21 for § 1983). Given the facts in the Complaint, Plaintiff has done anything but simply make

22 "conclusory assertions". The punitive damages claims should not be stricken from the pleadings.[3]

23

24

25

26        [3] The Motion also moves to strike portions of the Complaint (Mot. at 5:8-10) because of
27 impermissible punitive damage claims against CCSF itself. Plaintiff asks the Court to simply
   interpret the Complaint to only allege punitive damages against the individual defendants. If this
   course is undesirable, then Plaintiff should have leave to amend the Complaint so as to make the
28 language clear that the punitive damage allegations only pertain to the individual defendants.

1

2

**IV.**     **The Statements in the Complaint Directly Related to CCSF's Workplace Investigation Should Also Not Be Stricken Because the Allegations Do Not Arise from Protected Activity.**

3        When conducting an anti-SLAPP analysis, the first requirement Defendants must prove is

4  "whether the complaint arises from protected activity". *Ratcliff*, 79 Cal. App. 5th at 989 n.1. It did

5  not. Defendants attempt a sleight of hand to smuggle their unprotected private statements made to

6  Shin about the investigation into the realm of protected activity. Defendants apparently attempt to

7  argue that because the anti-SLAPP statute protects statements made directly before an official

8  proceeding, the anti-SLAPP statute also protects the private statements about the investigation made

9  to Plaintiff under Government Code section 821.6. *See* Mot. at 5:16-6:5. Defendants make no

10  argument supporting this point—they simply state it as if it is the law. But the cases they cite do not

11  support this position. In fact, *none* of the cases they cite even contain a citation to both Government

12  Code section 821.6 and the anti-SLAPP statute, let alone a discussion or holding on the nexus of the

13  two. Thus, this is apparently Defendants' novel (and unsupported) theory supplied without any

14  argument. It thus fails. And it stands to reason why: you cannot bootstrap all statements regarding

15  any activities leading up to a judicial proceeding as protected by anti-SLAPP. The statute is clear in

16  what is protected in subsection (e); private statements made about an investigation are not listed.

17        Even if Defendants show that a claim is based on protected activity, "the burden switches to

18  the plaintiff to establish the lawsuit has at least minimal merit." *Ratcliff* at 997. Given the

19  voluminous allegations, Plaintiff's claims have much more than minimal merit. Indeed, the

20  allegations regarding the investigation also support the various FEHA claims alleged in the

21  Complaint, which the Motion does not attempt to dismiss.

22                                       **CONCLUSION**

23        For the aforementioned reasons, this Court should deny the Motion.

24

25  Dated:  May 31, 2023                         TORRES & TOLMAN

26                                       By:      /s/ James J. Torres
                                                    James J. Torres
27
                                              *Attorneys for Plaintiff*
28

-15-