UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL SHIN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JEANINE NICHOLSON, et al.,<br><br>　　　　Defendants. | Case No. 23-cv-00456-VC<br><br>**GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS; DENYING THE MOTIONS TO STRIKE**<br><br>Re: Dkt. No. 21 |

　　The motion to dismiss is granted regarding the third (negligence), twelfth (racial discrimination, § 1981), and thirteenth (racial discrimination, § 1983) causes of action. The motion to dismiss is denied regarding the first (battery), second (assault), and fourteenth (intentional infliction of emotional distress) causes of action. The motion to dismiss is partially granted regarding the tenth (harassment) cause of action—the complaint states a claim for disability harassment against some defendants but not for racial harassment. The motion to strike the punitive damages allegations is denied, as is the Anti-SLAPP motion to strike a series of allegations related to the conduct of fire department officials in the wake of the alleged attack. This ruling assumes the reader is familiar with the facts, the applicable legal standard, and the arguments made by the parties.[1]

---

[1] Neither party has objected to the Court's exercise of supplemental jurisdiction over the state law claims in this action, even if the federal claims are dismissed. Remanding the state law claims now would result in a duplication of work at the pleadings stage, given that this Court has already become familiar with and analyzed the allegations and legal issues. Moreover, given Shin's suggestion that he may replead the dismissed federal claims or assert other federal causes of action in response to this order, declining supplemental jurisdiction could result in the case bouncing back and forth between courts. Thus, considerations of judicial economy, convenience, and fairness counsel in favor of exercising supplemental jurisdiction.

*Battery and Assault*. Shin seeks to impose liability on the City for the attack by Muhammad on a theory that the City ratified the attack. Ratification of a tortious act allows an employer to be liable for that act "where the employer either authorized the tortious act or subsequently ratified an originally unauthorized tort." *Ratcliff v. The Roman Catholic Archbishop of Los Angeles*, 79 Cal. App. 5th 982, 1002 (2022). "The theory of ratification is generally applied where an employer fails to investigate or respond to charges that an employee committed an intentional tort, such as assault or battery." *Id.*; *see also S.G. v. San Francisco Unified School District*, 2018 WL 1876875, at *4 (N.D. Cal. Apr. 19, 2018) ("Evidence of ratification may include failure to discharge, censure, criticize, suspend, sanction, or otherwise take action." (citing *C.R. v. Tenet Healthcare Corp.*, 169 Cal. App. 4th 1094, 1110 (2009)).

Whether ratification occurred is ultimately a factual question. *S.G.*, 2018 WL 1876875, at *4. For the purposes of a motion to dismiss, Shin has certainly alleged a plausible claim for ratification: according to the complaint, not only did Fire Department officials fail to act against Muhammad themselves but also they refused to cooperate with the police investigation into the attack, discouraged Shin from cooperating (including yelling at him), and finally acted against Shin by ending his paid leave and health insurance while he was still recovering. *See Coats v. Construction & Gen. Laborers Local No. 185*, 15 Cal. App. 3d 908 (1971) (finding the employer's difficulties with and harassment of the plaintiff after the plaintiff was assaulted by an employee provided further evidence of the employer's ratification of the assault).

The City appears to argue that it is nonetheless immune from liability as a matter of law. Public entities are generally immune from tort liability for injuries caused by their employees, unless a statute provides for liability under the circumstances. Cal. Gov. Code § 815. There is a statute providing for public entity liability for "injury proximately caused by an act or omission of the employee of the public entity within the scope of his employment." Cal. Gov. Code § 815.2(a). The City contends that Muhammad was acting outside the scope of his employment when he attacked Shin. The City seems to be arguing, at least by implication, that a tortious act by an employee cannot be brought within the scope of employment by an act of ratification by

the employer.

But the legal effect of ratification "is to treat the act as if originally authorized" by the employer. *LeBrun v. CBS Television Studios, Inc.*, 68 Cal. App. 5th 199, 209 (2021); *see also Rakestraw v. Rodrigues*, 8 Cal. 3d 67, 73 (1972) (noting that the "authority which is given to the purported agent relates back to the time when he performed the act"). It is presumably for this reason that several cases have contemplated public entity liability under a ratification theory. *See, e.g.*, *City of Los Angeles v. Superior Court*, 33 Cal. App. 3d 778, 782–83 (1973) (noting that a municipality may be liable "for willfully continuing to employ an individual of known violent propensities"); *S.G.*, 2018 WL 1876875, at *4–5 (allowing tort claims against a school district for the sexual abuse of a teacher to proceed past a motion to dismiss under a ratification theory).[2]

The City also invokes the workplace compensation exclusivity doctrine in support of dismissal. But the key question for the applicability of the WCED is whether the injury "can ever be viewed as a normal aspect of … the employment relationship or the claims process." *Charles J. Vacanti, M.D., Inc. v. State Compensation Insurance Fund*, 24 Cal. 4th 820, 822 (2001). The alleged ratification of the attack makes it as though the Fire Department initially authorized the attack—and being attacked with a wrench by a coworker with the permission of one's employer is "beyond the boundaries of the compensation bargain." *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 713–14 (1994). Shin does not merely allege an "adverse personnel decision," "such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances." *Cole v. Fair Oaks Fire Protection District*, 43 Cal. 3d 148, 160 (1987). Rather, Shin alleges a concerted campaign to make him so scared and miserable that he would give up on pursuing the criminal charges against Muhammad or resign from the Fire Department.

*Negligence*. The complaint is specific about Muhammad's prior inappropriate and threatening conduct, but it is vague about tying the requisite knowledge, authority, and failure to

---

[2] Neither case about ratification cited by the City helps its cause. Despite the City's assertion, the opinion in *City of Los Angeles* does not say that the plaintiff must show scope of employment in addition to and separate from ratification. And none of the factual differences between the attack in *Coats* and the alleged attack on Shin are convincing bases for distinguishing the cases.

act to particular Fire Department officials. It refers to the Fire Department in general, using phrases like "SFFD" or "SFFD command," or it refers to unnamed, unidentified officers, such as "an SFFD battalion chief" or "senior SFFD officers." For that reason, the complaint fails to state a claim against any one person. Shin comes the closest with Captain Patricia Lee, but she is not named as a defendant.

It follows that the negligence claim against the City must be dismissed. Since there is no general tort liability for public entities except as provided by statute, the City cannot be held directly liable for negligence under these circumstances. Cal. Gov. Code § 815; *see also de Villers v. County of San Diego*, 156 Cal. App. 4th 238, 252 (2007) ("We find no relevant case law approving a claim for direct liability based on a public entity's allegedly negligent hiring and supervision practices."); *C.A. v. William S. Hart Union High School District*, 53 Cal. 4th 861, 873 (2012) (approvingly discussing the *de Villiers* court's reasoning and findings on liability). And for a public entity to be held vicariously liable for the tortious conduct of its employee, the allegations must "give rise to a cause of action" against an employee acting in the scope of employment. § 815.2(a). Since the allegations contain insufficient factual matter to support a claim against any employee, the negligence claim against the City is dismissed as well.[3]

There is an additional concern: a negligence claim against a person requires that the person be under a legal duty to use due care. California tort law "does not recognize a general duty of care on the part of supervisors with respect to negligent hiring, retention, or training." *Estate of Hennefer v. Yuba County, California*, 2023 WL 4108077 (E.D. Cal. Jun. 21, 2023). Shin invokes *C.A. v. William S. Hart Union High School District*, in which the California Supreme Court held that allegations that school supervisors "knew or should have known of [an

---

[3] As noted, the Complaint comes closest to stating a negligence claim against Captain Patricia Lee. Despite her not being named as an individual defendant, her conduct could have provided a basis for vicarious liability for the City. However, the complaint still comes up short. Causation is a key element of a tort claim. Taken alone, the allegations that identify Lee provide an insufficient basis for the conclusion that Lee was aware of a proximate, acute threat to Shin's safety such that she should have acted immediately to eliminate Muhammad's access to the firehouse and Fire Department database.

4

employee's] dangerous propensities, but nevertheless hired, retained, and failed to properly supervise [them]," "if proven, could make the [School] District liable under a vicarious liability theory encompassed by section 815.2." 53 Cal. 4th at 875. But that case may not establish a duty here. The Court was clear in *William S. Hart* that the "potential legal liability" of school supervisors "arises from the special relationship they had with [ ] a student under their supervision." 53 Cal. 4th at 877; *see also id.* at 869–80 (describing the accumulated case law about school officials' special relationship with their students); *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 218–19 (emphasizing the necessity of establishing a special relationship to demonstrate an affirmative duty to protect). It is unclear whether a special relationship exists in this context. And Shin identifies no case in which a California court held that a supervisor can be individually liable for injury to one employee resulting from the negligent supervision of another employee.[4] However, there is no need to reach this issue of state law now, as the other pleading flaws already warrant dismissal of the negligence claims.

*Harassment*. The racial harassment claims are dismissed because Shin does not sufficiently allege that his treatment was "more likely than not" motivated by his race. *See Soria v. Univision Radio Los Angeles, Inc,.* 5 Cal. App. 5th 570, 591 (2016); *see also Jones v. Department of Corrections & Rehabilitation*, 152 Cal. App. 4th, 1367, 1370 (2007); *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 215 (2013). The introduction to the complaint describes Fire Department officials as having "unleash[ed] a torrent of harassment to silence an Asian victim of violence crime." Dkt. No. 1 at 4. That statement alone merely describes Shin's race—it does not assert that the harassment was because of it. Shin also cites statistics demonstrating that Asian Americans are underrepresented in the SFFD and its leadership as compared to the proportion of Asian Americans living in San Francisco, and that Asian American firefighters were overrepresented in SFFD disciplinary proceedings compared to the proportion of Asian

---

[4] Shin does cite a case from around 1900, *Skelton v. Pac. Lumber Co.*, 140 Cal. 507, 512 (1903); *see* Dkt. No. 30, at 13 n.2. This case is inapposite and possibly outdated given subsequent substantial developments in California tort law on affirmative duties.

American firefighters in the department. Dkt. No. 1 at 29. Additionally, the complaint describes two alleged racist comments made in the wake of the COVID-19 pandemic by anonymous firefighters. *Id.* From these statistics and statements, Shin asserts that the Fire Department has a "workplace culture of intolerance against the Asian community." *Id.* But even if the statistics and statements provide some support for that assertion, they are insufficient on their own to justify the inference that the particular treatment Shin experienced after the alleged attack was based on his race. This is especially true given that the complaint identifies an alternative theory, well-supported by the allegations: Shin's treatment was retaliation for his insistence on pursuing criminal prosecution and unwillingness to let the Fire Department handle the matter internally.

The disability harassment claims do not share this flaw—there are specific allegations about how the officials involved responded to Shin's invocations of his disability. The complaint alleges that Shin was instructed to participate in an in-person interview (Shin refers to it as an "interrogation") about the incident with Muhammad and the lead-up to it. Shin refused to do so, saying that he was not able to because of his PTSD. After this refusal, he allegedly received two phone calls from Fire Department officials. First, he alleges that Chief of Department Nicholson called to pressure him to participate despite his PTSD. Second, he alleges that when Shin informed Deputy Chief O'Connor that he could not sit for an interview because of his PTSD, O'Connor "became irate," began "yelling at" Shin, and threatened to cut off Shin's paid leave if he did not show. That alleged call was around April 29, 2022, and the Fire Department ended Shin's paid leave and health insurance in May 2022. This states a plausible claim that the adverse treatment and employment actions taken by the Fire Department were taken because of Shin's disability-based refusal to follow an employer instruction. Moreover, the defendants do not argue that Shin's disability was not a motive behind his treatment—they argue only that the treatment was insufficiently severe and pervasive and insufficiently tied to specific individual actors, neither of which is convincing.[5] Thus, the disability harassment claims can proceed

---

[5] The "existence of a hostile work environment" is assessed with a "totality of the circumstances" test that asks whether "a reasonable person subjected to the discriminatory

against all defendants except for Lieutenant Certain, since the complaint ascribes no disability-related motive to Certain's alleged actions.

*Racial Discrimination.* The claims for racial discrimination under 42 U.S.C. § 1981 and 42 U.S.C. § 1983 are flawed, as currently plead, for the same reasons as the race-based harassment claims: discriminatory intent is insufficiently alleged.

*Intentional Infliction of Emotional Distress*. The IIED claims against the City and the individual defendants are both supported with plenty of specific allegations: the complaint alleges a coordinated plan amongst the individual defendants to harry, frame, pressure, and ultimately punish Shin for pursuing criminal charges against Muhammad. Shin alleges that this was a conspiracy to make him so miserable, at a vulnerable time, that he would either quit or capitulate.

The defendants' attempts to dismiss these claims do not hold water. As already discussed, the Fire Department officials' alleged conduct in the wake of the attack was outside the scope of the WECD. The defendants also argue, in a single sentence, that the IIED claims are barred by California Government Code § 820.2 as the emotional distress was "the result of the exercise of the discretion vested in" Fire Department officials. But § 820.2 only immunizes public officials when they have "consciously exercised discretion in the sense of assuming certain risks in order to gain other policy objectives." *Lopez v. Southern California Rapid Transit District*, 40 Cal. 3d 780, 794 (1985). The defendants wisely drop this point in their reply brief, rather than arguing that the alleged pressure campaign against a crime victim to discourage him from cooperating with the police on assault charges was the result of a considered policy decision. Finally, the defendants argue that the City is immune under California Government Code § 815, since Muhammad's alleged attack was not within the scope of his employment. But the defendants

---

conduct would find . . . that the harassment so altered working conditions as to make it more difficult to do the job." Cal. Gov. Code § 12923(a). The statute gives as an example conduct that would "interfere with and undermine the victim's personal sense of well-being." *Id.* Given the context, the allegations about the phone calls and subsequent end to Shin's paid leave and health insurance describe severe enough treatment to survive the motion to dismiss stage.

misunderstand: the IIED claims against the City are not based on Muhammad's alleged actions but based on the alleged subsequent actions of fire department officials toward Shin.

*Punitive Damages*. The defendants move to strike all punitive damages allegations as immaterial under Federal Rules of Civil Procedure 12(f). The defendants argue that the punitive damages allegations against the City are clearly a nonstarter since the City is immune from punitive damages under California Government Code § 818. In response, Shin requests that the complaint be interpreted to only assert punitive damages claims against the individual defendants, rather than striking every sentence that asserts that Shin is entitled to punitive damages for a cause of action (as the defendants had asked). Dkt. No. 1 at 14. Shin's request is granted. As far as the individual defendants, malice and oppression have been plead with more than conclusory statements. Thus, the motion to strike the punitive damages allegations is denied.

*Anti-SLAPP*. The defendants' Anti-SLAPP motion to strike was entirely deficient. The whole motion spans about a page in length. Dkt. No. 21-1 at 5–6. With it, the defendants attempt to eliminate all allegations relating to Fire Department officials' conduct investigating the attack on Shin. In it, the defendants do not cite a single case or statutory provision that would support the idea that the speech in question is protected under the Anti-SLAPP statute. *See Ratcliff*, 79 Cal. App. 5th at 997 (citing *Park v. Board of Trustees of California State University*, 2 Cal. 5th 1057, 1061 (2017)) (noting that defendants bear the initial burden of making a prima facie showing that the claim is based on protected activity).[6] Shin raises this omission in his

---

[6] The defendants do make one mention of protected speech, but it is inapplicable and inadequate. They note only that public entity speech *can* be protected under the Anti-SLAPP statute, if the same speech would have been protected if made by private individuals. Dkt. No. 21-1 at 12 (quoting *Vargas v. City of Salinas*, 46 Cal. 4th 1, 17 (2009)). But the defendants never even assert that this speech would have been protected if it had been made by private individuals in a private employer's workplace investigation—likely, because it would not have been.

8

opposition.

Yet, in the reply, defendants come no closer to identifying supporting authority. Instead, they raise and respond to a related, additional issue with the motion—that it does not attempt to strike causes of action but rather various scattered allegations. Again, the defendants miss the mark. It is true that when a cause of action includes allegations of both protected and unprotected activity, an Anti-SLAPP motion can strike portions of the count as plead. *Baral v. Schnitt*, 1 Cal. 5th 376, 393 (2016). But that does not itself show why the allegations in question are of protected activity.

Moreover, precisely which allegations the defendants seek to strike is a moving target. In the initial motion, they say "[s]tatements directly related to CCSF's workplace investigation into plaintiff's claims," and then cite a series of paragraphs and lines which they say that description "include[es]." Dkt. No. 21-1, at 13. Presumably, that means that they wanted more than just those cited portions stricken. But those cited portions already include plenty of allegations that are not simply the content of statements by public officials. In the reply brief, the defendants say that all "[r]eferences to the internal investigation (or otherwise protected free speech) should be appropriately stricken from the complaint." Dkt. No. 31, at 16. That sounds like the defendants are asking the Court itself to comb through the complaint for instances of protected free speech, after Shin has already had his opportunity to respond, and without identifying why each instance of speech would be protected.

As discussed at the hearing, this Anti-SLAPP motion, in addition to being presented improperly, seems frivolous. It makes no sense to allow public officials to recover attorneys' fees from a citizen who alleges that the public officials conducted an investigation corruptly (except when it can be shown that the allegations were made in bad faith). And lawyers representing the government should think twice before bringing motions that create a financial disincentive to bringing allegations of public misconduct. Nonetheless, given the muddled nature of the case law regarding protected speech by public officials under the California Anti-SLAPP statute, sanctions will not be imposed against the defendants or their counsel.

* * *

Discovery may move forward immediately on the surviving claims. If Shin wishes to file an amended complaint to attempt to cure the defects in the claims that have been dismissed, he must do so within 14 days. However, if Shin wishes simply to proceed on the surviving claims, and if discovery on the surviving claims gives him a good-faith basis to reassert the dismissed claims, he is free to seek leave to amend the complaint at that time.

**IT IS SO ORDERED.**

Dated: August 29, 2023

VINCE CHHABRIA
United States District Judge