UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL SHIN,<br><br>Plaintiff,<br><br>v.<br><br>JEANINE NICHOLSON, et al.,<br><br>Defendants. | Case No. 23-cv-00456-VC (DMR)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. No. 215 |

On November 25, 2025, the court ordered Plaintiff Gabriel Shin and Defendant City and County of San Francisco ("CCSF") to meet and confer in person at the Oakland courthouse to resolve the issues identified in eight discovery dispute letters.[1] [Docket No. 186; *see* Docket Nos. 169, 177, 178, 179, 180, 181, 182, 183.] The court further ordered that "[i]f any disputes remain from those letters, the parties shall file a new standalone joint discovery letter by December 12, 2025." [Docket No. 186.] The meet and confer session took place on December 5, 2025. [Docket Nos. 197, 199.]

The parties did not file a joint discovery letter by December 12, 2025. Instead, they submitted a joint status report which says "the Parties were able to resolve a number of issues, plus put together a framework to potentially resolve other issues" and they "will file a Joint Report to this Court no later than December 23, 2025, to advise the Court whether all issues have been resolved, or if not, informing the Court of any remaining issues for the Court's consideration." [Docket No. 202.] The status report did not identify any specific outstanding issues. *Id.* On December 24, 2025, the parties filed a nine-page joint discovery letter. [Docket No. 215.]

---

[1] This was the third time the court had to take the "extraordinary measure of ordering the parties to appear in person at the Oakland courthouse to meet and confer[.]" [Docket No. 138; *see* Docket No. 107.]

Plaintiff and CCSF ignored the court's order to file any remaining discovery disputes by December 12, 2025, and essentially gave themselves an extension. Even with this self-administered reprieve, many of the disputes still appear to be half-baked. For these reasons, all of the disputes raised in the unauthorized December 24, 2025 letter are untimely. The court nevertheless addresses a few issues that appear to be close to resolution, and one that is not ripe. The remaining issues will not be adjudicated because they are untimely.

**I.      DOCKET NO. 169**

As to Plaintiff's Rule 30(b)(6) Topic Nos. 35 and 36, "CCSF has agreed to provide a Declaration regarding the Racial Equity Action Plan ('REAP') to authenticate the plan documents and to state that the racial statistics stated in the REAP are accurate and correct to the best of CCSF's knowledge and ability to determine." [Docket No. 215 at 1.] Plaintiff represents that he "takes no issue with this in principle[.]" *Id.* at 2. The only dispute concerns the date by which CCSF will produce the declaration: CCSF states it will provide the declaration by January 7, 2026, but Plaintiff requests the declaration by December 31, 2025. *Id.*

CCSF shall serve the declaration no later than **January 7, 2026**.

**II.     DOCKET NO. 178**

The parties agree that Plaintiff will make Martin Beltran available for up to three hours to complete his deposition. [Docket No. 215 at 4.] The parties represent that they are working on mutually agreeable date. *Id.* If they have not yet agreed upon a date for Mr. Beltran's deposition, they shall do so no later than **January 5, 2026**.

**III.    DOCKET NO. 180**

The parties were unable to resolve their dispute regarding CCSF's alleged waiver of attorney client privilege or work product doctrine with respect to the San Francisco City Attorney's 2025 investigation into Defendant Robert Muhammad. [Docket No. 215 at 7; *see* Docket No. 180.] The parties summarize the issue as whether "CCSF [can] decide to present its attorney-led Investigation into Mr. Muhammad in 2025 as a defense, and thus inject the City Attorney's office's investigative report and certain related materials into the case in its own defense, without waiving the attorney-client privilege and/or work product as it relates to that Investigation?" [Docket No. 180 at 1.]

1   CCSF produced the report in August 2025 and has also produced "certain formal investigatory files
2   containing the City Attorney's investigator with respect to the Investigation." *Id.* at 1, 3.
3       At this juncture, it is not clear whether CCSF will rely on its investigation in its defense at
4   trial. Therefore, any order regarding waiver would be premature. Indeed, Plaintiff does not argue
5   that CCSF has in fact used or attempted to use the investigation as a defense and instead resorts to
6   conjecture:

> At trial, CCSF will inevitably assert that it terminated Defendant Muhammad's employment once it felt it had justification to do so. When asked what that justification was, CCSF will answer that it felt justified to do so once it received the Investigation's report as to the findings against Defendant Muhammad. The Investigation and its findings will thus be the central backbone for CCSF's decision as to why it ended up taking action here, even at this late hour, and it will thus be the (if not the only) central bulwark in Plaintiff's claims of bad faith with respect to CCSF's conduct.

*Id.* at 3; *see id.* at 1 ("*[I]f* CCSF were to directly and explicitly assert attorney-client advice as a defense in this case, then all Parties seem to agree that any assertion of privilege pertaining to all such advice and/or claims of work product privilege related to such advice would be waived.") (emphasis added). Plaintiff's scenarios are, at this point, merely hypotheticals. Under these circumstances, an "[o]rder that CCSF has waived its attorney-client and work product privileges" (Docket No. 215 at 7) amounts to an improper request for an advisory opinion. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024) ("[F]ederal courts do not issue advisory opinions about the law[.]") (citation omitted); *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (Federal courts lack "the power to render advisory opinions . . . advising what the law would be upon a hypothetical state of facts.") (cleaned up); *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952) ("The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.").

While the undersigned declines to rule on the waiver issue because it is not ripe, nothing in this order precludes Plaintiff from re-raising the issue, if necessary, at an appropriate time.

## IV.　DOCKET NO. 183

### A.　Rule 30(b)(6) Deponent Regarding Muhammad's Pre-December 2024 Job Duties

The parties agree that CCSF will produce a witness to testify "on the issue of Muhammad's job duties at Treasure Island before December 2024." [Docket No. 215 at 8.] The only outstanding dispute concerns when CCSF will provide the witness' identification and availability, and when the deposition will take place. *Id.* Plaintiff requests such information by December 31, 2025 and that the deposition take place by January 14, 2026. *Id.* CCSF states that it needs until January 6 to provide deposition dates and contends the deposition should take place before January 23. *Id.*

As trial is scheduled to begin on February 9, 2026, CCSF shall identify the witness no later than **January 5, 2026**, and the deposition shall take place no later than **January 16, 2026**.

### B.　Manitsoudis/Stewart Documents

Plaintiff seeks the production of drafts and edits of a report of the investigation into Muhammad that was used to notify Muhammad of his discipline and that served as the foundation for his recommended termination. [Docket No. 215 at 8; Docket No. 183 at 2.] CCSF represents that the primary investigator, Chris Manitsoudis, and his supervisor, Keslie Stewart, are searching for additional documents relating to a report of the investigation into Muhammad, beyond those already produced. [Docket No. 215 at 8.] Plaintiff seeks, by December 31, 2025, "a definitive account of the state of the investigation into the existence of these documents" and the production of any responsive documents. *Id.* at 8–9. CCSF states that it will produce any responsive documents by January 7, 2026. *Id.* at 9.

No later than **January 5, 2026**, CCSF shall either: (1) produce any and all responsive documents; or (2) if no such documents are found, counsel for CCSF shall serve on Plaintiff a declaration, signed under penalty of perjury, that sets forth (a) what search terms were used for each custodian; (b) what devices, databases, local drives, cloud storage, or other electronic sources were searched and collected; (c) whether search terms were applied before or after performing the collection(s); (d) the time frame(s) for the searches; (e) who conducted the searches (i.e., an e-discovery vendor, a member of an IT department, counsel, or the custodian); and (f) counsel's

involvement in those searches, including which counsel supervised the searches and collections.

**IT IS SO ORDERED.**

Dated: December 30, 2025

_____
Donna M. Ryu
Chief Magistrate Judge